Shirley L. ARONSON, Plaintiff–
Appellant,

v.

Gene M. GRESSLY, individually; Lewis
M. Dabney, individually; and the Uni-
versity of Wyoming, Defendants–Appel-
lees.

No. 91–8037.

United States Court of Appeals,
Tenth Circuit.

April 8, 1992.

Bernard Q. Phelan, Cheyenne, Wyo., for
appellant-plaintiff.

Bruce N. Willoughby, Casper, Wyo., and
Dennis M. Coll, Atty. Gen.'s Office, Chey-
enne, Wyo., for defendants-appellees.

Before LOGAN and TACHA, Circuit
Judges, and COOK, Senior District Judge.[*]

TACHA, Circuit Judge.

Plaintiff-appellant Shirley L. Aronson ap-
peals the district court's order granting
defendants' motion for summary judgment
as to Aronson's three federal law claims.
The parties proceeded to a jury trial on two
state law breach of contract claims, and
Aronson was denied relief. On appeal, Ar-
onson appeals only the district court's
grant of summary judgment and argues
that the district court erred in holding that
she was not deprived of due process in
relation to her termination, that her age
discrimination claims are time-barred under
the Age Discrimination in Employment Act
(ADEA), and that the time limit for timely
filing under the ADEA was not equitably
tolled. We exercise jurisdiction under 28
U.S.C. § 1291 and affirm in part and re-

---

[*] The Honorable H. Dale Cook, Senior District
Judge for the United States District Court for
the Northern District of Oklahoma, sitting by
designation.

verse in part.[1]

## BACKGROUND

From 1974 to 1987, Aronson worked as a biographical specialist at the American Heritage Center (AHC) at the University of Wyoming. In August 1987, Aronson—who at that time was fifty-two years old—applied for a lateral transfer to another position within the AHC, but the position was granted to another individual who was thirty-six years old. Believing that she had been unlawfully discriminated against on the basis of age, Aronson first met informally with University officials and later was granted a full-fledged hearing before the University's Civil Rights Review Board. After hearing testimony, the Board found that there was no evidence of age discrimination and that the younger applicant was selected based on her superior experience.

In February 1988, Dr. Lewis Dabney replaced Dr. Gene Gressley as the Director of the AHC. Because Dabney decided to shift the emphasis of the AHC from soliciting new biographical collections to cataloguing existing collections, he met with Aronson on several occasions to discuss a revision of Aronson's position description. Dissatisfied with Dabney's proposals regarding a new description, Aronson refused to accept and perform her revised duties. During March 1988, Aronson was absent from work for a time apparently due to her dissatisfaction with the proposed position description.

In a letter dated March 28, 1988, Dabney informed Aronson that she would face disciplinary measures for insubordination if she did not return to work. The letter stated that these disciplinary measures could include termination. Aronson did not respond to the letter. In a memorandum dated April 8, 1988, Dabney offered to give Aronson two weeks leave, with pay and without disciplinary repercussions, if she would return to work after the leave, sign a negotiated position description, and perform her work "diligently and in good spir-

it." Significantly, this memorandum clearly notified Aronson that if she did not return to work, she would be disciplined for her alleged insubordination on March 28, 1988. This April 8 memorandum was the result of negotiations between University personnel and Aronson's attorney. Nevertheless, Aronson rejected Dabney's offer.

In another memorandum dated April 15, 1988, Dabney informed Aronson that, pursuant to University of Wyoming Regulation 174, he was imposing disciplinary action against her for her insubordination of March 28, 1988. In the memorandum, Dabney notified Aronson of his decision to suspend her without pay for five days. The memorandum also informed Aronson that, following the suspension, she could return to work on a probationary basis if she would report to work at 8:00 a.m. on April 25, 1988. Finally, the memorandum notified Aronson that if she did not return to work in accordance with the terms set forth in the memorandum, her employment would be terminated effective April 25, 1988.

When Aronson failed to report for work on April 25, 1988, Dabney sent a Disciplinary Notice to Aronson that terminated her employment—effective April 25, 1988—for insubordination and failure to report to work. The notice informed Aronson that she had five days to respond. The notice also included an acknowledgment form requesting that Aronson indicate whether she wanted to accept the action, appeal the action to a University Employment Practices Officer, or meet with another University representative. On April 29, 1988, Aronson returned the Notice on which she indicated her desire to meet with University personnel services officer Dick Cottrell on May 2, 1988. On May 2, Aronson filed a grievance alleging that the actions of Dabney and others violated several University regulations, none of which dealt with age discrimination. After pursuing these grievances, Aronson was restored to full-time employment in the University library and was paid for all wages and benefits for the period from April 29, 1988 to October 21, 1988.

---

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.

R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

Aronson then filed a complaint and three amended complaints in the district court below. Aronson alleged violations of the Age Discrimination in Employment Act (ADEA), deprivation of property and liberty interests in violation of the Due Process Clauses of the Fifth and Fourteenth Amendments, and two breach of contract claims. The district court granted defendants' motion for summary judgment on the ADEA and due process claims, but denied summary judgment on the two contract claims. Aronson was denied relief following a jury trial on the two breach of contract claims. Aronson appeals the district court's grant of summary judgment on the ADEA claim and the claim of an unconstitutional deprivation of her property interest in continued employment.

## DISCUSSION

We review summary judgment orders de novo, using the same standards the district court applies. *Osgood v. State Farm Mut. Auto. Ins. Co.*, 848 F.2d 141, 143 (10th Cir.1988). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *see Anderson v. Liberty Lobby*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986).

### I. Procedural Due Process Claim

■ Aronson first contends that the district court erred in holding that she was afforded an adequate hearing prior to her termination. Aronson argues that she was subjected to disciplinary action on two occasions: first, she was suspended for five days, and second, she was terminated. On appeal, she argues only that she was denied due process with respect to the termination. Aronson contends that she was terminated for her failure to return to work and that, until after the termination, she was never afforded the opportunity to explain why she had not returned. Aron-

son does not argue that the post-termination process was insufficient.

In *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), the Supreme Court clearly established what process is due prior to depriving a public employee of her property interest in continued employment. The Court noted that " 'the root requirement' of the Due Process Clause ... [is] 'that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest.' " *Id.* at 542, 105 S.Ct. at 1493 (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971)). Although this principle entitles an employee to " 'some kind of a hearing' prior to ... discharge," *id.* (quoting *Board of Regents v. Roth*, 408 U.S. 564, 569–70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972)), " 'something less' than a full evidentiary hearing is sufficient." *Id.* 470 U.S. at 545, 105 S.Ct. at 1495 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 343, 96 S.Ct. 893, 907, 47 L.Ed.2d 18 (1976)). The Court then summarized the essential "notice" and "opportunity to respond" requirements as follows:

> The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement. The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.

*Id.* 470 at 546, 105 S.Ct. at 1495 (citations omitted). By recognizing that less than a full-blown pre-termination hearing was adequate for due process purposes, the Court struck a balance between, on the one hand, an employee's interest in retaining employment and presenting her side of the story, *id.* at 543, 105 S.Ct. at 1493–94, and, on the other hand, the public employer's "interest in quickly removing an unsatisfactory employee." *Id.* at 546, 105 S.Ct. at 1495.

Applying these principles to the undisputed facts of this case, we conclude that Aronson was afforded due process prior to her termination. The evidence overwhelm-

ingly indicates that Aronson received notice on numerous occasions of the University's charges against her. Dabney's March 28, 1988 letter to Aronson clearly complained of Aronson's absence from work and warned that disciplinary measures, including termination, would be considered if she did not return to work. The April 8, 1988 letter resulted from negotiations between University personnel and Aronson's attorney. The University's complaints with Aronson's absence from work and refusal to accept her responsibilities were clearly understandable from both the letter and the negotiations. Finally, the April 15, 1988 memorandum from Dabney to Aronson further notified Aronson of the University's charges against her and of possible actions that could be taken. These three memoranda, along with the negotiations that accompanied them, more than met the *Loudermill* requirements that Aronson be provided with notice of charges against her and with an explanation of the University's evidence.

Aronson's primary complaint on appeal, however, is that she was not afforded an opportunity to present her side of the story or to explain why she did not report to work on April 25, 1988. All three memoranda sent by Dabney to Aronson expressed Dabney's concern or complaint that Aronson had been absent from work; the first two memoranda requested that she return. These memoranda clearly notified Aronson that her absence from work could lead to dismissal. Aronson failed to respond to the March 28 letter and did not respond to the April 8 letter until April 21, after Dabney had taken disciplinary action on April 15. Aronson contends that a hearing would have enabled her to express her expectation that her position be "classified" by the personnel department. However, Aronson concedes that the classification of her position description was the topic of numerous prior meetings with Dabney. In short, Aronson received ample opportunity to return to work or to respond to the University's charges. Aronson clearly had an opportunity to present her side of the story. Certainly, the Due Process Clause requires no more prior to termination.

## II. Age Discrimination in Employment Act Claim

■ Aronson next contends that the district court erred by dismissing her ADEA claim related to her termination on April 25, 1988 on grounds that the claim was time-barred under 29 U.S.C. § 626(d). Although the district court also dismissed Aronson's claim of an alleged ADEA violation based on her September 9, 1987 non-selection for a lateral transfer, on appeal Aronson argues only that the ADEA claim related to her termination is not time-barred. Aronson filed a complaint, which made the allegations of unlawful age discrimination, with the EEOC on December 28, 1988—246 days after the University terminated her.

Section 626(d) of title 29 of the United States Code provides, in pertinent part, that

[n]o civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission. Such a charge shall be filed—

(1) within 180 days after the alleged unlawful practice occurred; or

(2) in a case to which section 633(b) of this title applies, within 300 days after the alleged unlawful practice occurred, or within 30 days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier.

Although the defendants moved for summary judgment on the grounds that Aronson's EEOC filing failed to meet the 180-day time limit imposed by subsection (1) of § 626(d), on appeal both parties concur in the fact that subsection (2) of § 626(d) applies in this case because the State of Wyoming has statutorily prohibited employment discrimination on the basis of age. *See* Wyo.Stat. § 27-9-105. States that have adopted such laws prohibiting employment discrimination are commonly referred to as "deferral states."

The district court held that the 300–day limitation in § 626(d)(2) should be reduced to 240 days under the Supreme Court case of *Mohasco Corp. v. Silver*, 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980). Although the court recognized that *Mohasco* is a Title VII case, it applied *Mohasco* to this ADEA claim because of the similarities between the language of Title VII and the ADEA. Because Aronson's claim was filed with the EEOC on day 246, the district court concluded that the claim was time-barred under § 626(d)(2).[2] On appeal, Aronson argues that the district court erred in imposing a 240–day time limitation on EEOC filings under § 626(d)(2). Furthermore, Aronson contends that her age discrimination claim related to her April 25, 1988 termination was filed within the 300–day time limit allowed by § 626(d)(2). Defendants, on the other hand, argue that Aronson did not file a claim with the state fair employment practices agency at the time she filed her EEOC claim and therefore cannot avail herself of the full 300–day time limit of § 626(d)(2).

A timely filing with the EEOC is a prerequisite to a civil suit under both the ADEA, 29 U.S.C. § 626(d), and Title VII, 42 U.S.C. § 2000e–5(f)(1). In addition, both the ADEA, 29 U.S.C. § 626(d)(2), and Title VII, 42 U.S.C. § 2000e–5(e), allow 300 days for a complainant in a deferral state to file a claim with the EEOC. *Mohasco* establishes that under Title VII, a complainant who files an EEOC claim prior to filing a state claim may not necessarily avail himself of the full 300–day time period afforded by 42 U.S.C. § 2000e–5(e). Because Title VII provides that claims may not be filed with the EEOC "before the expiration of sixty days after proceedings have been commenced under the State or local law,

unless such proceedings have been earlier terminated," 42 U.S.C. § 2000e–5(c), a complainant in a deferral state should file his claim with the EEOC "within 240 days of the alleged discriminatory employment practice in order to *insure* that his federal rights will be preserved." *Mohasco*, 447 U.S. at 814 n. 16, 100 S.Ct. at 2491 n. 16 (emphasis added).

Under the ADEA, however, complainants "may file with the State before or after they file with [the EEOC]." *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 756 n. 4, 99 S.Ct. 2066, 2072 n. 4, 60 L.Ed.2d 609 (1979); *see also* 29 U.S.C. §§ 626(d) & 633(b). In *Oscar Mayer*, the Supreme Court recognized that

[t]he ADEA permits concurrent rather than sequential state and federal administrative jurisdiction in order to expedite the processing of age-discrimination claims. The premise for this difference is that the delay inherent in sequential jurisdiction is particularly prejudicial to the rights of "older citizens to whom, by definition, relatively few productive years are left." 113 Cong.Rec. 7076 (1967) (remarks of Sen. Javits).

441 U.S. at 757, 99 S.Ct. at 2072. In light of this difference between the ADEA and Title VII, we see no reason why the time limitations announced by the Supreme Court in *Mohasco* should apply to the ADEA, 29 U.S.C. § 626(d)(2). The 300–day period of § 626(d)(2) is not limited or qualified in any way except for the requirement that a complaint with the EEOC be filed "within 30 days after receipt by the individual of notice of termination of proceedings under State law." *Id.* Therefore, the district court erred in ruling that Aronson's claim, which was filed with the EEOC 246 days after the occurrence of the alleged

---

**2.** For the sake of clarity, we note that—even in Title VII cases—*Mohasco* does not establish a rigid 240–day time limit for filing. In *Mohasco*, the Court stated that

a complainant in a deferral State having a fair employment practices agency over one year old need only file his charge within 240 days of the alleged discriminatory employment practice in order to *insure* that his federal rights will be preserved.

447 U.S. at 814 n. 16, 100 S.Ct. at 2491 n. 16 (emphasis added). The Court went on to explain that failure to file within 240 days is not an automatic bar:

If a complainant files later than that (but not more than 300 days after the practice complained of), his right to seek relief under Title VII will nonetheless be preserved if the State happens to complete its consideration of the charge prior to the end of the 300–day period. *Id.*

discrimination, was time-barred under § 626(d)(2). *See Astacio–Sanchez v. Fundacion Educativa Ana G. Mendez,* 724 F.Supp. 11, 15 (D.P.R.1989).

Because we reverse the district court's determination that Aronson's ADEA claim is time-barred under § 626(d)(2), we need not address Aronson's argument that the time limitation should be equitably tolled.

AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings.