**Joyce E. DAVIS, Plaintiff,**

v.

**WESLEY RETIREMENT COMMUNITIES, INC., et al., Defendants.**

**No. 93–1350–FGT.**

United States District Court, D. Kansas.

Nov. 8, 1995.

**1440**

Robert S. Allen, Allen Associates, Wichita, KS, for plaintiff.

Jeffrey B. Hurt, W. Stanley Churchill, Ross A. Hollander, Martin, Churchill, Overman, Hill & Cole, Wichita, KS, for defendants.

## MEMORANDUM AND ORDER

THEIS, District Judge.

This court has before it two motions: (1) defendants' motion for summary judgment on plaintiff's Title VII and Kansas Act Against Discrimination (KAAD) claims because they were untimely filed (Doc. 22–23), and (2) defendants' motion for summary judgment on all of plaintiff's claims of racial discrimination (Doc. 56–57). Each of them will be addressed in turn.

■ Rule 56(c) of the Federal Rules of Civil Procedure directs the entry of summary judgment in favor of a moving party who "show[s] that there is no genuine issue as to any material fact and that they are entitled to a judgment as a matter of law." A principal purpose "of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The court's inquiry is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

■ The burden of proof at the summary judgment stage is similar to that at trial. The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact by informing the court of the basis for its motion. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552. This burden, however, does not require the moving party to "support its motion with affidavits or other similar materials negating the opponent's claim." *Id.* Once the moving party properly supports its motion, the nonmoving party "may not rest upon mere allegation or denials in his pleadings, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514; *Shapolia v. Los Alamos Nat'l Laboratory,* 992 F.2d 1033, 1036 (10th Cir.1993). "A genuine issue 'must be predicated on a viable legal theory.'" *Windon Third Oil & Gas v. F.D.I.C.,* 805 F.2d 342, 346 (10th Cir.1986), *cert. denied,* 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987).

■ The court reviews the evidence in a light most favorable to the nonmoving party, *e.g., Washington v. Board of Public Utilities,* 939 F.2d 901, 903 (10th Cir.1991), under the substantive law and the evidentiary burden applicable to the particular claim. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513. If the nonmoving party fails to make a factual showing which, viewed in a light most favorable to him or her, establishes the existence of an element essential to that party's case, then summary judgment is appropriate. *Aldrich Enterprises, Inc. v. United States,* 938 F.2d 1134, 1138 (10th Cir.1991). Summary judgment is inappropriate, however, if there is sufficient evidence on which the trier

of fact could reasonably find in the nonmoving party's favor. *Prenalta Corp. v. Colorado Interstate Gas Co.,* 944 F.2d 677, 684 (10th Cir.1991).

The following facts are undisputed for purposes of the two motions. On June 3, 1992, plaintiff was an employee of Larksfield Place, a retirement and adult health care facility. On that date, plaintiff was accused of physically abusing a resident of Larksfield Place. The alleged abuse was reported to the Kansas Department of Health & Environment (KDHE). Following an investigation, Caela Bryant Thomas ("Bryant" hereafter), plaintiff's supervisor, suspended the plaintiff on June 4, 1992. Following an initial investigation by an investigator for the KDHE, the investigator found in a report dated June 17, 1992 that Joyce Davis was physically abusive of the resident (Doc. 57, defendant's exhibit F). The plaintiff was then terminated by Bryant and Mary Stuart, the administrator of Larksfield Place, on June 18, 1992. Plaintiff was terminated for allegedly abusing a resident of the facility.

The KDHE issued its notice of finding of abuse on August 6, 1992 (Doc. 57, defendant's exhibit H). A hearing before the KDHE was held on February 18, 1993, after plaintiff appealed the notice of the finding of abuse. At that hearing, Mary Stuart testified. She was called to testify concerning the credibility of the witnesses who had testified on behalf of the plaintiff. Betty Wright, a KDHE attorney, asked the following question to Ms. Stuart:

Wright: Basically, we're thinking of this one incident, but the people ... were they—did they hang out together, were they a group of people that got along that would stick up for each other?

Stuart: Yes, they are and one reason is that they are all black.

Wright: But Kayla Bryant is black.

Stuart: Kayla Bryant is cut from a different mold and they saw her as being a different person, too, because she was in a management position ... She comes from a totally different background, from an upper middle class family, whereas a lot of these gals come from lower middle class

families and they have very much the ethic that you stick together no matter what.

Wright: Uh,—

Stuart: Not include Kayla in that because they saw her as a totally different kind of person.

Wright: So, it is your feeling that they would be willing to lie to protect Joyce?

Stuart: Yes, I think that is very true.

Wright: And, that Kayla Bryant wouldn't be?

Stuart: I believe that is true.

(Doc. 57, Exh. M at 7–8). Later, Ms. Stuart was questioned by plaintiff's counsel:

Counsel: You indicated that the people that were mentioned by Ms. Wright were all friends and associates of Joyce Davis?

Stuart: That's right....

Counsel: And you say that they are all a lower class background and they stick together and would lie?

Stuart: I did say they were all from lower class backgrounds. I said nurse aides tend to be from lower class—lower middle class backgrounds and we had a group of folks here at one time who had this stick together attitude that no matter what happened they stuck together. Even some of our very best aides who were black stuck up for each other no matter what, even when they knew that that person was wrong.

Counsel: Is it your testimony that they were sticking up for each other because they were all black?

Stuart: Uh, I don't _____ I _____ h'mm. You are trying to get me to say something that I really don't mean.

Counsel: You have already said it. You have already made yourself out to be a hell of a bigot. I don't know where we can go from here. You also said that they would lie, is that correct?

Stuart: I am saying that there is a very good possibility that these people would lie to protect their friends, yes.

Counsel: You say there was a very good possibility, you just said they would. That was your testimony.

Stuart: I think there is a very good possibility that they would.

(Doc. 57, Exh. M at 11–12).

On February 26, 1995, the presiding officer for the KDHE filed his report on the appeal (Doc. 57, defendant's exhibit L). In his report, the presiding officer found inconsistencies and conflicting evidence as to whether the abuse occurred. The officer also noted the confusion of the resident who was allegedly abused and that this resident had a history of complaining and false accusations. The officer found that there was an underlying current of conflict between plaintiff and the administration and potential racial bias by the administration. Based on this evidence, the presiding officer found that, based on a standard of clear and convincing evidence, that the plaintiff did not abuse the resident. No appeal was apparently taken from the officer's findings.

Plaintiff claims that she did not know until the testimony of Stuart on February 18, 1993 that defendants' reasons for terminating her may have been racially motivated. Plaintiff filed her initial complaint on April 21, 1993. Initially the Kansas Human Rights Commission (KHRC) and the Equal Employment Opportunity Commission (EEOC) denied jurisdiction of the complaint because it was untimely. However, the KHRC reversed its decision and accepted plaintiff's KHRC complaint. The KHRC refused to accept a copy of the April 21 complaint, so on May 25, 1993, a retyped complaint was filed with the KHRC. Plaintiff received a right to sue letter from the EEOC on August 2, 1993. This case was filed on September 2, 1993. Plaintiff does not dispute the fact that the interval of time between her termination and the filing of her complaint exceeded 300 days. However, plaintiff contends that the 300 day limitation for filing her complaint with the KHRC or the EEOC was tolled until plaintiff knew, or should have known, that the reasons for her termination were racially motivated.

■ The timely filing of a discrimination charge with the EEOC is a prerequisite to a civil suit under Title VII. *Aronson v. Gressly,* 961 F.2d 907, 911 (10th Cir.1992). In a deferral state such as Kansas, a Title VII claimant must file his or her discrimination charge with the appropriate state or local agency, or with the EEOC, within 300 days of the alleged unlawful act. *Peterson v. City of Wichita, Kansas,* 888 F.2d 1307, 1308 (10th Cir.1989), *cert. denied,* 495 U.S. 932, 110 S.Ct. 2173, 109 L.Ed.2d 502 (1990). However, a timely charge of discrimination with the EEOC or other state or local agency is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling. *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982). Equitable tolling under Title VII is appropriate only when the circumstances of the case rise to the level of active deception, or when the plaintiff has been lulled into inaction by their past employer, state or federal agencies, or the courts, or when the plaintiff has in some extraordinary way been prevented from asserting his or her rights in a timely manner. *Hulsey v. Kmart, Inc.,* 43 F.3d 555, 557 (10th Cir.1994); *Johnson v. U.S. Postal Service,* 861 F.2d 1475, 1480–81 (10th Cir.1988); *Martinez v. Orr,* 738 F.2d 1107, 1111 (10th Cir.1984).

■ In the case of *Hulsey v. Kmart,* 43 F.3d 555, the 10th Circuit addressed the issue of whether the limitation period for filing a Title VII action is tolled until the plaintiff knew or should have known that the unfavorable job action was based on illegal motives. In *Hulsey,* the two plaintiffs were demoted and transferred in February 1989 and February 1990, respectively. Based on a television program which aired in December 1992, the two plaintiffs suspected for the first time that their demotions and transfers were motivated by age discrimination. Plaintiffs argued that the limitation period should be tolled until December 1992, when they first suspected that the adverse job action may have been motivated by age discrimination.

The court held that if equitable tolling applied every time an employer gave a nondiscriminatory reason for its employment decisions, it would be tantamount to asserting that an employer is equitably estopped whenever it does not disclose a violation of the

statute. If this were the case, the 300 day period for filing a charge would have little meaning. Regardless of the reasons advanced by the employer for the employment decision, the employee still has a duty to determine whether there was a discriminatory motivation for the employment decision. A declaration of discrimination need not be issued before the statute of limitations begins to run under Title VII. *Id.* at 558. Notice or knowledge of the discriminatory motivation is not a prerequisite for a cause of action to accrue under Title VII. On the contrary, it is knowledge of the adverse employment decision itself that triggers the running of the statute of limitations. *Id.* at 558–59.

Therefore, the 300 days which plaintiff had for filing her Title VII claim are not tolled until she knew or should have known that her termination was racially motivated. The mere fact that the employer gave a non-discriminatory reason for her termination does not constitute "active deception" which would toll the time period for filing the action. Since plaintiff filed her action more than 300 days after she was terminated, her action is time-barred by the applicable statute of limitations.

▪ The next issue is whether plaintiff's claim under the KAAD should be similarly dismissed because it was not timely filed with the KHRC. The KAAD requires the filing of a timely charge with that agency prior to the initiation of a lawsuit. K.S.A. 44–1005(i); *Laughinghouse v. Risser*, 754 F.Supp. 836, 842 (D.Kan.1990). Under K.S.A. 44–1005(i), any complaint filed under this act must be filed within six months after the alleged act of discrimination or the last act of discrimination. As noted earlier, the timely filing of an administrative charge is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel and equitable tolling. *Laughinghouse*, 754 F.Supp. at 842. Federal courts in this district have assumed that the Kansas courts would reach a similar conclusion concerning the KAAD. *Id.*

▪ Since plaintiff concedes that a complaint was not filed within the 300 days permitted for Title VII, it follows that plaintiff did not file a timely claim within the six months permitted by the KAAD. Again, plaintiff argues that the six month period for filing a KAAD claim should be tolled until plaintiff knew or should have known that the reasons for her termination were racially motivated. Although federal court decisions concerning Title VII are not controlling, they are persuasive authority regarding comparable issues under the KAAD. *Woods v. Midwest Conveyor Co., Inc.*, 231 Kan. 763, 767, 648 P.2d 234 (1982). As this court has previously stated, "[a]ssuming the Kansas Supreme Court would also apply Title VII's equitable tolling principles to cases arising under the KAAD," *MacDonald v. Fleming Foods–Cash & Carry Division*, No. 87–1367, 1988 WL 131353 (D.Kan. Nov. 18, 1988), the plaintiff has failed to establish that the time limits should be tolled. Therefore, summary judgment is also appropriate on plaintiff's KAAD claim.

▪ Defendants also seek attorney's fees under 42 U.S.C. § 2000e–5(k), which provides as follows:

> In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

Defendants rely on the case of *Christiansburg Garment Co. v. E.E.O.C.*, 434 U.S. 412, 421, 422, 98 S.Ct. 694, 700, 701, 54 L.Ed.2d 648 (1978), which held as follows:

> In sum, a district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith. . . . Hence, a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so . . . if a plaintiff is found to have brought or continued such a claim in bad faith, there will be an even stronger basis for charging him with the attorney's fees incurred by the defense.

Defendants contend that the court should award them their costs and attorney's fees because plaintiff maintained their Title VII and KAAD claims despite the fact that they were clearly untimely filed. Even though the court has found that the Title VII and KAAD claims were untimely filed, the court does not find that plaintiff was without any foundation for believing that the court might find that the limitations period should be equitably tolled on the facts of this case. At the time this motion was briefed, the 10th Circuit had not ruled on whether the limitations period should be equitably tolled when the employer puts forward a nondiscriminatory reason for the adverse job action, and the plaintiff later discovers a discriminatory reason for the adverse job action. It was only after this motion had been fully briefed that the 10th Circuit issued its opinion in *Hulsey v. Kmart, Inc.,* 43 F.3d 555 (10th Cir.1994), which this court has relied on in issuing its ruling. At least one circuit has tolled the period for filing a Title VII action when the employer put forward a nondiscriminatory reason for the adverse job action and the plaintiff only later discovered evidence that the adverse job action might have been for a discriminatory reason. *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384, 1389, 1391–92 (3d Cir.1994); *but see Thelen v. Marc's Big Boy Corp.,* 64 F.3d 264, 267–68 (7th Cir.1995) (declining to follow *Oshiver*), *Dring v. McDonnell Douglas Corp.,* 58 F.3d 1323, 1329–30 (8th Cir.1995); *Olson v. Mobil Oil Corp.,* 904 F.2d 198, 202–03 (4th Cir.1990); *Merrill v. Southern Methodist University,* 806 F.2d 600, 605 (5th Cir. 1986). Based on the split in the circuits, and the fact that the 10th Circuit had not yet ruled on equitable tolling in a similar factual situation when this motion was filed, plaintiff was not without foundation for seeking equitable tolling in this case. The court therefore finds that it would not be appropriate to award defendants attorney's fees even though they have prevailed on the Title VII and KAAD claims.

■ The second motion before the court is defendants' motion for summary judgment on the remaining 42 U.S.C. § 1981 claim (Doc. 56). In racial discrimination suits, the elements of a plaintiff's case and

the allocation of burdens are the same under Title VII or § 1981. *Randle v. City of Aurora,* 69 F.3d 441, 450 (10th Cir.1995); *Drake v. City of Fort Collins,* 927 F.2d 1156, 1162 (10th Cir.1991). In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court set forth a model burden-shifting scheme to order the presentation of evidence in Title VII or § 1981 cases. First, the plaintiff is required to prove a prima facie case. A prima facie case is established once the plaintiff shows that: (1) the plaintiff belongs to a protected class, (2) the plaintiff was discharged for violating a work rule, and (3) similarly situated non-minority employees who violated the same rule were treated differently. *Elmore v. Capstan, Inc.,* 58 F.3d 525, 529–30 (10th Cir.1995); *E.E.O.C. v. Flasher Co., Inc.,* 986 F.2d 1312, 1316 (10th Cir.1992); *McAlester v. United Air Lines,* 851 F.2d 1249, 1260 (10th Cir.1988). The infractions giving rise to the comparison need not involve exactly the same offenses; they need only be of comparable seriousness. *Elmore,* at 530; *Flasher,* at 1316; *McAlester,* at 1261. For purposes of this motion, defendants have assumed that plaintiff can establish a prima facie case (Doc. 57 at 19). Therefore, the court will proceed to the second step of the *McDonnell* analysis.

■ Once the plaintiff has established a prima facie case, the defendant must articulate some legitimate, nondiscriminatory reason for the employee's rejection. The defendant need only articulate through some proof a facially nondiscriminatory reason for the termination; the defendant does not need at this stage of the proceedings to litigate the merits of the reasoning, nor does it need to prove that the reason relief upon was bona fide, nor does it need to prove that the reasoning was applied in a nondiscriminatory fashion. However, the proffered reason for the action taken against the minority employee must be reasonably specific and clear. *Flasher,* 986 F.2d at 1316. Defendants' position is that the plaintiff was terminated based on their finding that she had abused a patient at the retirement facility. The court finds that defendant has demonstrated through some proof a facially nondiscrimina-

tory reason for the termination. Therefore, the court will proceed to the third and final step of the *McDonnell* analysis.

If defendant is able to meet this requirement, then the burden shifts to the employee to prove by a preponderance of the evidence that the legitimate justification offered by the employer is merely a pretext for discrimination. A plaintiff may prove pretext by showing that the employer was motivated by a discriminatory reason or that the employer's explanation was not credible. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981). To show pretext, the employee need neither prove his or her employer's proffered reasons were false, nor that a discriminatory factor was the sole motivating factor in the employment decision. Instead, the employee must prove only that a discriminatory factor was also a reason for the employer's decision, and that it was the factor that made a difference. Defendant is entitled to summary judgment if the plaintiff fails to present any credible evidence on the issue of pretext. Plaintiff's mere conjecture that the employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment. *Branson v. Price River Coal Co.*, 853 F.2d 768, 771–72 (10th Cir.1988). In resisting summary judgment, the plaintiff must be given a full and fair opportunity to demonstrate by competent evidence that the presumptively valid reasons for her termination were in fact a cover-up for a discriminatory decision. In evaluating the plaintiff's evidence, we must determine whether the evidence interpreted in the light most favorable to the plaintiff could persuade a reasonable jury that the employer had discriminated against the plaintiff. If no facts relating to the pretextuality of the defendant's action remain in dispute, summary judgment is appropriate. *Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1455 (10th Cir.1994).

Key to the resolution of the third step of the *McDonnell* analysis is the report of the presiding officer for the KDHE in plaintiff's appeal of the finding of abuse. After hearing the testimony of the many witnesses, the presiding officer found that, based on a standard of clear and convincing evidence, the plaintiff did not abuse the resident. The officer noted the inconsistencies and conflicting evidence that had been presented to him. The officer also found that the underlying current of conflict between plaintiff and the administration and the potential racial bias by the administration may have been factors in plaintiff's dismissal. That racial bias was demonstrated by the testimony of Mary Stuart, who had testified before the officer that the witnesses who had testified in plaintiff's favor could not be believed because lower middle class black people stick up for each other, and would therefore lie to protect the plaintiff, who is also black. Therefore, there is credible evidence that the plaintiff may have been fired because her testimony and that of other blacks who testified in her favor were not believed by the employer because they were black. Reviewing the evidence in a light most favorable to the plaintiff, a discriminatory factor may have been a reason for the employer's decision, and it may have been the factor that made a difference in the finding of the employer that plaintiff had abused the resident, which resulted in the plaintiff being fired. Therefore, summary judgment is not warranted on plaintiff's § 1981 claim.

Defendant's motion also seeks to dismiss the Title VII claim against defendant Stuart because Stuart was not an "employer" under Title VII. Since summary judgment has already been granted in favor of the defendants on the Title VII claim, this issue is now moot and need not be addressed.

IT IS THEREFORE ORDERED that defendants' motion for summary judgment on the Title VII claim (Doc. 22) is granted.

IT IS FURTHER ORDERED that defendants' motion for summary judgment on the KAAD claim (Doc. 22) is granted.

IT IS FURTHER ORDERED that defendants' motion for attorney's fees for prevailing on the Title VII action (Doc. 56) is denied.

IT IS FURTHER ORDERED that defendants' motion for summary judgment on the § 1981 claim (Doc. 56) is denied.