**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 31 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JANET MICHELLE KETCHER
BARZELLONE, individually and as
the parent and next friend of Hannah
Elizabeth Ketcher Richardson,

        Plaintiff - Appellant,

v.

CITY OF TULSA; RON PALMER,
individually; KELLY YOUNG,
individually; DEBBIE LEAVER, an
individual; TULSA POLICE
DEPARTMENT, separately and Ron
Palmer as Chief of Police of the City
of Tulsa Police Department,

        Defendants - Appellees,

DARRYL RANDOLPH, an individual,

        Defendant.

No. 99-5088

(N.D. Oklahoma)

(D.C. No. CV-97-717-K)

---

**ORDER AND JUDGMENT** *

---

Before **BRISCOE** , **ANDERSON** , and **LUCERO** , Circuit Judges.

---

*This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Following her termination as a City of Tulsa police officer, Janet Michelle Ketcher Barzellone filed this action against the defendants alleging, among other things,[1] violations of her rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213; Title VII, 42 U.S.C. §§ 2000e et seq.; and Oklahoma Anti-Discrimination statutes, Okla. Stat. tit. 25, §§ 1301-11, 1901. After the parties had engaged in discovery, the district court granted defendants' motion for summary judgment, holding that Barzellone's claims were time-barred and, alternatively, that she failed to establish a prima facie case on the merits.

On appeal, Barzellone contends, inter alia, that: (1) her claims were not time-barred because she was not ultimately terminated until January 11, 1996, instead of on June 14, 1995, the date relied on by the defendants, (2) the City Civil Service Commission did not have authority to terminate her, (3) the City violated the ADA and the Oklahoma Anti-Discrimination statutes by failing to enter into an "interactive process" to accommodate her disability, and (4) she was not given an opportunity to show that her termination on the stated ground of misconduct was a pretext for discrimination against her because of disability or gender. For the reasons stated below, we agree with the district court and affirm.

---

[1]Barzellone also asserted claims for false arrest, defamation, misrepresentation, malicious prosecution, and ERISA and fiduciary duty violations. The district court rejected these claims and Barzellone does not appeal those rulings.

# BACKGROUND

Ms. Barzellone was employed by the City as a police officer. In December 1994, the Tulsa County District Court issued a Mutual Protective Order directing Barzellone and her boyfriend, Darryl Randolph, not to abuse, harass or threaten each other. On February 18, 1995, Randolph reported to police that Barzellone had pursued his vehicle at speeds above 100 miles per hour and bumped his car. Detective Kelly Young, interviewed Randolph and other witnesses, and filed an affidavit summarizing his investigation. Subsequently, criminal charges were filed against Barzellone for reckless driving and violating the Protective Order.

Chief of Police Ronald Palmer suspended Barzellone with pay on March 16, 1995, pending the outcome of her case. Under a plea agreement, Barzellone pleaded guilty to misdemeanor charges of violating the Protective Order and of reckless driving. On June 6, 1995, after Barzellone subsequently pleaded guilty, Palmer notified her in writing of a pretermination hearing to be held on June 12, 1995. The written notification stated that termination of her employment was being considered because of her violations of law and police regulations including: reckless driving; violation of a protective order; failure to know, enforce, and obey laws and ordinances; and conduct unbecoming an officer. See Appellee's Supp. App. at 181-82. Barzellone, represented by counsel, had an opportunity to respond to the charges at the hearing conducted by Palmer.

Following the hearing, Palmer terminated Barzellone on June 14, 1995, effective on June 15, 1995.

Generally contemporaneous with this time period, Barzellone represented that she had physical and emotional problems that disqualified her from performing her duties. On March 1, 1995, Barzellone wrote to Palmer, saying that she had been diagnosed with Multiple Sclerosis and a brain tumor. She stated, "I have become unable to perform my duties safely and without fear of injury to myself and to others," Appellee's Supp. App. at 250, and requested "a lateral transfer into a civilian position or medical retirement." Id. On March 8, 1995, Barzellone again wrote to Palmer that she wanted "to transfer into a civilian position within the City of Tulsa," id. at 251, and attached a letter from her family physician, Dr. Faith Holmes, stating that:

> Ms. Barzellone was diagnosed in July, 1994 with Multiple Sclerosis by a neurologist, Dr. Webb . . . . She also over recent months, has had a diagnosis of adjustment disorder with depression, I believe, related to dealing with her diagnosis of Multiple Sclerosis. More recently she is having problems with memory, with time elapsing which she cannot account for, as well as repeating activities, which she does not recall having just completed.
>
> In light of the above, it is my impression that Ms. Barzellone is no longer able to carry out her duties as a police officer in a manner which is consistent with her own safety and the safety of others she is working with and for.

Appellee's Supp. App. at 252. The City placed Barzellone in its alternate job placement program and, in April 1995, offered her a position at the City Zoo.

Barzellone declined the offer. In May, Barzellone transmitted a letter from Dr. Randall Webb to the City that stated that Barzellone's "rather severe tension-type headaches . . . have gradually resolved. At this time she has returned to normal and is not having any physical limitations from my standpoint." Appellant's App. at 12. Dr. Webb's letter did not mention Multiple Sclerosis, adjustment disorder, depression, or memory lapses.

Following her termination by Chief Palmer on June 14, Barzellone appealed to the City Civil Service Commission, arguing that there was no sufficient cause for her termination and that her termination was a pretext to avoid a reasonable accommodation for her disability. After a hearing on August 30, 1995, the Commission determined that, as to her disability, the City made a reasonable accommodation by the zoo job offer and, as to the termination, the City had cause. See Appellee's Supp. App. at 238. The Commission found that Barzellone may not have understood her right to a reasonable accommodation when she rejected the City's alternative job offer. See Appellee's Supp. App. at 240. The Commission reasoned that, if Barzellone had accepted the zoo job, she would no longer have been a police officer and thus, not terminated by the police chief. Thus, the Commission "sustained [the termination] pending the allowance of a period of time to allow Barzellone an opportunity to find a position within the City of Tulsa which she could perform," Findings of the Civil Service

Commission at 2 (Jan. 11, 1996), Appellant's App. at 22, and restored her medical benefits during that period, but did not reinstate her or resume her pay. On January 11, 1996, after no job was located, [2] the Commission issued a written decision that her termination was supported by "good and sufficient cause." Id. Barzellone's medical benefits were revoked retroactive to her termination.

Barzellone filed a lawsuit in Oklahoma state court on February 16, 1996, that included allegations that the City discriminated against her in violation of the Oklahoma anti-discrimination statutes. On July 1, 1996, she filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). On July 16, 1997, Barzellone amended her pleadings to add an ADA claim. In August 1997, the defendants removed the case to federal district court for the Northern District of Oklahoma where, on October 7, 1997, Barzellone added a Title VII claim.

---

[2]The City tried to contact Barzellone and scheduled an interview for an inspector position. The record indicates that the City notified Barzellone and her attorneys by certified mail in late December: "The City has attempted to interview you for possible placement in an alternate job since November 28, 1995." Appellee's Supp. App. at 260.

# ANALYSIS

We review the district court's grant of summary judgment de novo. See Marx v. Schnuck Markets, Inc. , 76 F.3d 324, 327 (10th Cir. 1996). Applying this standard, we examine the factual record and reasonable inferences drawn therefrom in a light most favorable to the nonmoving party. See Byers v. City of Albuquerque , 150 F.3d 1271, 1274 (10th Cir. 1998). We will uphold the decision only if no genuine issue of material fact exists and the party is entitled to judgment as a matter of law. See Marx , 76 F.3d at 327.

*Timeliness*

Oklahoma law requires a discrimination complaint to be filed within 180 days after the discriminatory practice occurred. See 25 Okla. Stat. § 1502(A). Title VII and ADA claims must be filed within 180 days after the occurrence of the unlawful discriminatory practice. See 42 U.S.C. § 2000e-5(e)(1). The Title VII and ADA period is extended to 300 days in states, such as Oklahoma, where a state agency investigates employment discrimination, if the plaintiff files a complaint with the state or local agency. See id.; EEOC v. Commercial Office Prods. Co., 486 U.S. 107, 110-12 (1988); Aronson v. Gressly , 961 F.2d 907, 911 (10th Cir. 1992). As a further time limitation, a plaintiff must initiate litigation

on ADA and Title VII claims within ninety days from the date of receipt of a "right to sue" letter from the EEOC.  See 42 U.S.C. § 2000e-5(f)(1).

For purposes of applying these time periods, Barzellone's central contention is that the date of her termination was January 11, 1996, the date of the Civil Service Commission's last action concerning her. [3]  Controlling law does not support that argument.  The City terminated Barzellone's employment on June 14, 1995–a fact stipulated to by the parties.  This date is the adverse employment decision that starts the filing period for a discrimination charge.  See Mascheroni v. Board of Regents of Univ. of Cal., 28 F.3d 1554, 1561 (10th Cir. 1994) (discussing Delaware State College v. Ricks, 449 U.S. 250, 258 (1980) (limitations period started when professor was notified that he was denied tenure and not when he was actually terminated the following year)).

Accordingly, Barzellone's state anti-discrimination claim is barred because her July 1, 1996, claim filed with the Oklahoma Human Rights Commission was more than 180 days after her June 14, 1995, termination.  Her ADA claim is barred because her filing date of July 16, 1997, is more than 300 days after the June 14, 1995, termination, and more than 90 days after her receipt of her EEOC "right to sue" letter on December 31, 1996.  Likewise, her Title VII claim, filed

---

[3]She also contends, without supporting authority, that the date she asserted her state claims in state court is constructively the date applicable to her unasserted federal claims.  That argument is without merit.

on October 7, 1997, after her ADA claim, is barred for the same reasons as her ADA claim. Thus, as the district court held, all her claims are time-barred.

Alternatively, we agree with the district court that even if Barzellone's claims were not time-barred, they would still fail on the merits.

### *ADA Claim*

To sustain a claim under the ADA, a plaintiff must establish that: (1) she is a disabled person within the meaning of the ADA; (2) she is qualified (i.e., she can perform the essential functions of her job with or without reasonable accommodation); and (3) the employer terminated her because of her disability. See Anderson v. Coors Brewing Co., 181 F.3d 1171, 1175 (10th Cir. 1999). Taking the requirements in reverse order, Barzellone has failed to raise a genuine issue of fact as to her contention that she was fired because of disability. The record firmly establishes that the City fired her because of her convictions for misdemeanor reckless driving and violation of a protective order and the circumstances of these offenses. Other than speculation, Barzellone offers no evidence that the City terminated her because of her disability.[4] See Trujillo v.

---

[4]Barzellone cites Lieutenant Jones' comment that forty percent of his recommendation to Chief Palmer to terminate her was based on her disability. Jones stated "I'd say 60/40; the 40 being the fact that . . . I just could not put her back in a police car [when] she blacks out and has no memory." Appellee's Supp.

(continued...)

<u>University of Colo. Health Sciences Ctr.</u>, 157 F.3d 1211, 1215 (10th Cir. 1998) (employer is entitled to summary judgment unless employee can offer evidence tending to show the falsity of employer's innocent explanation for its employment decision). Thus, she fails to establish an ADA claim.

Finally, even if Barzellone could surmount the hurdles of time bar and discharge for misconduct, she still fails to present any genuine issue on the second requirement of an ADA claim. She contends she was not accommodated and the City did not engage in an "interactive process." Appellant's Br. at 12. To the extent that such interactive considerations even apply here, <u>see</u> <u>Smith v. Midland Brake, Inc.</u>, 180 F.3d 1154, 1171 (10th Cir. 1999) (en banc), the City did extend a more than adequate helping hand. <u>See</u> <u>Taylor v. Phoenixville Sch. Dist.</u>, 184 F.3d 296, 319-20 (3d Cir. 1999); <u>Fjellestad v. Pizza Hut of Am., Inc.</u>, 188 F.3d 944, 952 (8th Cir. 1999). The City offered Barzellone a position at the zoo —which she refused—and tried to interview her for a Neighborhood Inspector position. Barzellone, in turn, did not update her medical condition as described by Dr. Holmes and Barzellone herself, did not show what jobs she was qualified

---

[4](...continued)
App. at 214. However, Jones also stated that he would have recommended termination solely based on her actions in the high speed chase. <u>See</u> <u>id.</u> at 215. In addition, Barzellone offers no evidence to show that Chief Palmer, who had sole termination authority, was aware of the basis of Jones' recommendation or that Palmer fired her for any reasons other that those given to Barzellone in writing prior to her hearing and at her termination.

to do with or without accommodation, and did not describe what, if any, accommodation she needed. This not only fails "interactive" requirements, it also fails to establish a prima facie case at step two of the factors listed above.

### *Title VII Claim*

The plaintiff in a Title VII case bears the initial burden of setting forth a prima facie case of discrimination. The plaintiff must show that: "1) she is a member of the class protected by the statute; 2) she suffered an adverse employment action; 3) she was qualified for the position at issue; and 4) she was treated less favorably than others not in the protected class." Sanchez v. Denver Pub. Sch. , 164 F.3d 527, 531 (10th Cir. 1998). Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for the adverse employment action. If the defendant does so, the plaintiff must show the defendant's proffered reasons are pretextual. See McDonnell Douglas Corp. v. Green , 411 U.S. 792, 802-03 (1973).

Based on the factual record, Barzellone did not establish the essential elements of a gender discrimination claim under Title VII because, by her own admission, she was not qualified for the position at issue. She wrote to the police chief stating that she was unable to perform her job and requesting a transfer to civilian employment or a medical retirement.

-11-

In addition, even if she did make a prima facie case, the City has shown a nondiscriminatory reason for her termination, as discussed above. Barzellone has presented no evidence that presents a genuine issue of material fact as to whether the City's action was a pretext for discrimination. [5] Therefore, we conclude that the district court correctly determined that the defendants were entitled to summary judgment on the Title VII claim. Barzellone's claim under the Oklahoma Anti-Discrimination statutes [6] fails for the same reasons her ADA and Title VII claims fail. [7]

---

[5]We carefully reviewed the record, including the 17 police disciplinary incidents that Barzellone cites to as evidence of gender discrimination. These materials from Internal Affairs included disciplinary actions of other officers for a variety of violations. The record does not show that Barzellone was treated less favorably. Each incident has distinct facts with no direct comparison to Barzellone's conduct. Also, in other cases of serious illegal and inappropriate conduct similar to Barzellone's, the officers often resigned before termination.

Further, we reject her argument that disparate treatment exists because the City has no express policy to terminate officers for misdemeanor offenses. Also, because we (and the district court) thoroughly reviewed the material Barzellone submitted, we reject her claim that she had no opportunity to establish pretext for her termination.

[6]Similar to the ADA and Title VII, Oklahoma law makes it unlawful to "fail or refuse to hire, to discharge, or otherwise to discriminate against an individual with respect to compensation or the terms, conditions, privileges or responsibilities of employment, because of . . . sex . . . or handicap unless such action is related to a bona fide occupational qualification." Okla. Stat. tit. 25, § 1302(A)(1).

[7]We have reviewed Barzellone's other arguments including: a cursory allegation of due process violations; that the City is estopped from claiming she

(continued...)

-12-

**CONCLUSION**

After reviewing all of Barzellone's arguments, for the foregoing reasons, we AFFIRM the judgment of the district court.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge

---

[7](...continued)
failed to exhaust her administrative remedies on her federal claims because she exhausted her remedies on her state claims filed in state court; and that the Commission had no authority to terminate her. We conclude that these arguments are meritless; except for the last contention, they are undeveloped and offered without any supporting authority. As to the Commission's authority, Barzellone cites an unpublished Oklahoma Court of Appeals case that is inapplicable. The court reversed the Commission for failure to determine whether a termination was for cause; here the Commission clearly found that Barzellone was terminated for cause.