**Wilma K. HANTON, Plaintiff–Appellant,**

**v.**

**Lawrence I. GILBERT, in his personal and official capacity; Edward D. Salmon, in his personal and official capacity; Paul Hardin, in his personal capacity; The University of North Carolina at Chapel Hill, Defendants–Appellees.**

No. 94–1302.

United States Court of Appeals,
Fourth Circuit.

Argued July 19, 1994.

Decided Sept. 16, 1994.

**ARGUED:** Alan McSurely, Chapel Hill, NC, for appellant. Barbara A. Shaw, Asst. Atty. Gen., North Carolina Dept. of Justice, Raleigh, NC, for appellees. **ON BRIEF:** Michael F. Easley, Atty. Gen., Thomas J. Ziko, Sp. Deputy Atty. Gen., North Carolina Dept. of Justice, Raleigh, NC, for appellees.

Before WILKINSON and WILLIAMS, Circuit Judges, and SHEDD, United States District Judge for the District of South Carolina, sitting by designation.

Affirmed by published opinion. Judge WILKINSON wrote the opinion, in which Judge WILLIAMS and Judge SHEDD joined.

## OPINION

WILKINSON, Circuit Judge:

In this case appellant claims that a discharge from her position in the Biology Department at the University of North Carolina at Chapel Hill ("UNC–CH") violated her First and Fourteenth Amendment rights. Because we believe that the district court properly granted the defendants summary judgment on her various claims, we affirm its judgment. 842 F.Supp. 845.

## I.

Appellant Wilma Hanton worked as a research analyst at UNC–CH. In 1984, the University purchased an electron microscope with a grant from the National Institute of Health ("NIH"). Hanton's professional responsibilities included maintaining the microscope, instructing others in its use, and assisting faculty members who used it in the course of their research.

In 1989, Dr. Lawrence Gilbert, Chairman of the Biology Department, announced a new policy regarding the microscope: the Department would charge a fee of twenty-five dollars per hour for use of the microscope and for appellant's services. These items had previously been provided by UNC–CH free of charge. As part of the new policy, Dr. Edward Salmon, Hanton's immediate supervisor, assigned her additional duties. Specifically, Dr. Salmon asked Hanton to keep a daily log of microscope users and a daily journal of her own activities. Hanton objected to these new tasks on the ground that the terms of the original agreement between UNC–CH and NIH provided for free microscope use. Hanton also complained about the policy to the Personnel Department, the Assistant Dean of the College of Arts and Sciences, and the state Auditor's Office.

In a personnel review dated September 7, 1990, Drs. Salmon and Gilbert rated Hanton's job performance unsatisfactory.[1] Their negative evaluation was based primarily on Hanton's failure to maintain accurate logs after repeated warnings to do so. In October 1990 Gilbert and Salmon reiterated to Hanton her responsibility for the newly assigned tasks and warned her that failure to perform them would result in termination. Hanton's employment difficulties continued into the spring of 1991. Finally, on May 23, 1991, Dr. Gilbert informed Hanton in writing that a pre-termination hearing would be held the following day and instructed her to leave the premises immediately.

On May 24, 1991, Dr. Gilbert and a Human Resources Department representative met with Hanton. Gilbert read to Hanton a letter from the Electron Microscope Committee unanimously recommending that she be terminated for insubordination. He also gave her a copy of the letter. Hanton declined to respond to the charges against her. At the close of the meeting, Hanton was officially discharged.

Hanton then pursued the matter in other fora. She initiated a state administrative proceeding, in which a state administrative law judge found that the University had just cause to terminate her. She declined to testify at the administrative hearing. Hanton also filed suit in state court, alleging that the discharge violated her rights under the First Amendment, the Due Process Clause, and the Equal Protection Clause, as well as various state statutory and common-law provisions. The defendants removed the case to federal district court.

The district court granted defendants' motion for summary judgment on Hanton's federal claims and remanded her state claims to state court. Hanton now appeals.

## II.

Hanton first contends that defendants fired her in retaliation for her criticism of the University's user fee policy, thereby violating her First Amendment rights. The district court held that although Hanton's speech involved a matter of public concern, it was not protected by the First Amendment because the University's interest in maintaining efficient operations outweighed Hanton's interest in criticizing the new fee policy. In any event, the court found, Hanton failed to show that her speech rather than her conduct caused the discharge.

■ In order to establish a retaliatory discharge claim under the First Amendment, a public employee must meet a two-pronged test. First, to trigger First Amendment protection, the speech at issue must relate to matters of public interest, *Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708 (1983), and the employee's inter-

---

1. Hanton appealed her performance review rating to the University's Personnel Appeals Board. Chancellor Hardin ultimately denied her appeal.

est in First Amendment expression must outweigh the employer's interest in efficient operation of the workplace. *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968). Second, the employee must demonstrate that his protected speech was a substantial factor in the employer's termination decision. *Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977).

■ We doubt that Hanton's speech addressed a matter of public concern. Her speech in this case pertained primarily to her new clerical duties, which she thought were "ridiculous" and "unreasonable", for which she felt she was overqualified, and which she viewed, in essence, as a waste of her time. She also voiced her objection to the user fee policy in the course of appealing her unsatisfactory personnel evaluation, a fact which itself suggests that the dispute here arose out of an employment grievance rather than as a matter of public policy. Moreover, the context of her speech reveals that she began to complain about the user fees only when additional work was required of her.

The gist of the record is clear: Hanton's complaints related to her personal dissatisfaction with the terms of her employment, not to possible grant violations. Hanton's contention that she in fact was protesting a matter of public concern is not evidenced in the record by anything other than her unsupported allegations to that effect.

■ Further, it is clear that defendants' interest in maintaining order in the workplace outweighed Hanton's interests in expression. The district court found that a good working relationship between Hanton, the only microscope technician in the Department, and her supervisors was essential to the efficient functioning of the facility. As in *Connick*, "[t]he limited First Amendment interest involved here does not require that [defendants] tolerate action which [they] reasonably believed would disrupt the office, undermine [their] authority, and destroy close working relationships." *Connick*, 461 U.S. at 154, 103 S.Ct. at 1694.

■ Moreover, we also agree with the district court that Hanton has not shown that her speech motivated defendants to discharge her. The record clearly demonstrates that Hanton's recalcitrance was a source of concern for the defendants for almost one and a half years, and that this conduct, not her speech, formed the basis of their decision to terminate her employment. Accordingly, defendants were entitled to summary judgment on the First Amendment claim.

### III.

■ Hanton next maintains that defendants deprived her of her property interest in employment without due process.[2] Because the record plainly indicates that defendants afforded her notice and a hearing prior to termination, the district court properly entered summary judgment on this claim.

■ The Due Process Clause guarantees public employees certain procedural safeguards prior to the termination of their employment. In particular, "the tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985).

Viewing the record as a whole, it is plain that the process afforded the appellant was sufficient under *Loudermill*. The letter that Gilbert read aloud and gave to Hanton clearly explained the basis of the Committee's recommendation to terminate her employment, which was her repeated refusal to carry out her job-related responsibilities. When Gilbert asked Hanton if she wished to respond to the charges in the letter, he granted her an opportunity to present her view of the matter. Having chosen to remain silent in the face of such an opportunity, Hanton cannot now claim a denial of due process. *Sat-*

---

**2.** Both parties agree that Hanton had a property     interest in her employment at UNC–CH.

*terfield v. Edenton–Chowan Board of Education,* 530 F.2d 567, 572 (4th Cir.1975).[3]

## IV.

■ Hanton finally asserts that defendants violated her rights under the Equal Protection Clause by treating her differently than her male colleagues. Hanton, however, has failed to produce any evidence that defendants discriminated against her on the basis of sex.

A review of the record reveals that Hanton produced no evidence of gender discrimination. There is no evidence that similarly situated males were afforded different treatment with regard to job duties. This is true for the simple reason that, because no male technicians were employed in the electron microscope laboratory, there were no similarly situated males in the Biology Department. In addition, Hanton's claims of professional alienation and of her employer's negative attitude toward her because of her gender are not substantiated by the record. Hanton's employment difficulties had to do with her unwillingness to perform duties that were reasonably requested of her. The dispute raised no triable issue of discrimination on the basis of sex.

## V.

Appellant has failed to create any genuine issue of material fact in support of her claim that her discharge violated her rights under the First and Fourteenth Amendments. Accordingly, the district court's grant of summary judgment to defendants is

*AFFIRMED.*

---

3. We also find no merit in plaintiff's claim that she was denied adequate post-deprivation process. The state provided her post-termination administrative and judicial remedies, both of which she utilized. The fact that plaintiff declined to testify at the administrative proceeding does not render that proceeding inadequate.