**James J. O'CONNELL, Plaintiff,**

v.

**MONTGOMERY COUNTY, MARYLAND and Clarence Edwards, Defendants.**

**Civil No. PJM 93–733.**

United States District Court, D. Maryland.

April 30, 1996.

Mindy G. Farber, Rockville, Maryland, Chet D. Levitt, Cashdan & Golden, Washington, D.C., for Plaintiff.

Bruce P. Sherman, Joyce R. Stern, County Attorney's Office, Rockville, Maryland, for Defendants.

## OPINION

MESSITTE, District Judge.

### I.

James J. O'Connell, a former captain with the Montgomery County, Maryland police, sues Montgomery County and its former police chief Clarence Edwards, alleging that he was retaliated against in his employment when he attempted to exercise his First Amendment right to free speech. He presents claims under 42 U.S.C. § 1983 and Article 27, § 733 of the *Maryland Code*, "The Law Enforcement Officer's Bill of Rights" ("LEOBR").[1]

Defendants have moved for summary judgment on a number of grounds—principally failure to state a claim, qualified immunity, and issue preclusion. Having considered the pleadings of the parties as well as oral argument on the motion, the Court will GRANT Defendants' motion based on O'Connell's failure to state a claim.[2]

### II.

A motion for summary judgment is the proper vehicle to challenge the sufficiency of a complaint when matters outside the pleadings are considered. *See* Fed.R.Civ.P. 12b. The test as always is whether a genuine issue of material fact exists; if not, summary judgment must be granted. Fed.R.Civ.P. 56c. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Thus, even if certain elements constituting a cause of action are disputed, if there is one critical element that remains undisputed, summary relief will be in order.

### III.

O'Connell began his employment with the Montgomery County Police Department in 1965. He progressed through the ranks of the Department and by 1987 was its second most senior captain. As of the fall of 1988, he occupied the position of District Commander of the Germantown District, the County's largest police district both geographically and in terms of employees. At that time, O'Connell applied for promotion to the position of Lieutenant Colonel, *i.e.* Deputy Chief of the Department. Three police majors and three police captains besides O'Connell applied for the vacancy. When O'Connell was not selected, he filed an administrative grievance alleging that certain promotional procedures followed by the Department in selecting the Deputy Chief violated the Montgomery County Charter, merit system law, and personnel regulations. Among other things, he complained that the examination procedure failed to provide sufficient guidelines and standards to ensure fairness and consistency of review and selection and argued that Department officials improperly manipulated the candidates' ratings. Considerable press coverage attended these complaints.

In November, 1991, O'Connell was advised by the Merit System Protection Board (MSPB) that his grievance had been denied. On January 10, 1992, disappointed by the

---

1. The Section 1983 claim comprises Count I of the Complaint, the LEOBR claim Count III. The Court's predecessor in these proceedings (Garbis, J.) previously dismissed Count II of the Complaint, a claim for civil conspiracy.

2. Defendant Edwards raises the defense of qualified immunity, which ordinarily should be taken up early in the proceedings to avoid the necessity of a defense on the merits. *Siegert v. Gilley*, 500

U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). However, Montgomery County, which does not enjoy the benefit of the qualified immunity defense, is also a defendant in this case. Since the Court must necessarily discuss the merits of the First Amendment claim insofar as the County is concerned and since the Court has determined that the claim fails on the merits, it defers ruling on the qualified immunity defense.

MSPB determination, O'Connell took an appeal to the Circuit Court for Montgomery County.[3]

He submits that on or about January 16, 1992, Clarence Edwards, who had become Chief of the Department in September, 1991,[4] informed him that he would be relieved of his position as District Commander of the Germantown District and demoted to a nonsupervisory position in the Office of Labor Relations.[5] O'Connell maintains that Edwards told him that he "better not see or read anything in the press regarding grievances or appeals or any quotes regarding the transfer." When O'Connell responded by asserting that Edwards was violating his federally protected rights, Edwards supposedly stated that there were still "worse jobs in the department" to which O'Connell could be transferred.

On January 29, 1992, O'Connell filed a complaint with the Montgomery County Personnel Director alleging that Edwards had harassed him and retaliated against him by virtue of the reassignment. O'Connell requested to be free of any harassment or retaliation in the exercise of his civil rights. When the County Personnel Director denied his complaint, O'Connell took another appeal to the MSPB. Edwards and the County moved to dismiss the MSPB appeal, but their motion was denied. The County then appealed the denial to the Montgomery County Circuit Court which, in the person of Judge James L. Ryan, affirmed the denial, holding that the MSPB in fact had jurisdiction over the retaliatory transfer complaint.[6] Approximately 6 days later, on October 21, 1992, O'Connell displayed Judge Ryan's decision—favorable to him—on his office door at police headquarters.

On October 26, 1992, O'Connell was again reassigned, this time to the Field Services Bureau, Duty Commander Section, a position which included work on a permanent night shift for 10 hours a day, from 8:00 p.m. to 6:00 a.m., 4 days a week including all weekends. O'Connell contends that, by virtue of the rigors of this position, he lost 25 pounds and suffered from sleep deprivation.

On January 12, 1993, the MSPB issued a decision finding no retaliation in O'Connell's relocation from Germantown District Commander to the Office of Labor Relations, i.e. "no violation of regulations, no denial of benefit, and no adverse effect in terms of loss of pay or rank within the department." The Board noted, among other things, that the transfer was properly processed and that other Department officials had also been transferred. No appeal was taken from that decision.

On April 21, 1993, the Maryland Court of Special Appeals, in an unreported opinion, affirmed the decision of the Montgomery County Circuit Court upholding the conclusion of the MSPB that the promotional process utilized by the Police Department in selecting its Deputy Chief did not violate merit system rules and regulations. The court concluded that there was "abundant evidence that the examination phase was conducted fairly and pursuant to a rational procedure of which all applicants were informed."

O'Connell retired effective January 1, 1994. He maintains that he would have continued serving for at least another 2 years, but because his working conditions became so intolerable he had no alternative but to re-

---

3. On July 17, 1992, the Circuit Court (Cave, J.) affirmed the MSPB decision, finding that the actions complained of were not "a deviation from the selection procedures adopted for the rank of Lieutenant Colonel." O'Connell further appealed that decision to the Maryland Court of Special Appeals.

4. Edwards had not been a member of the Department prior to that time and thus was not involved in any way in the promotional process for the position of Deputy Chief.

5. Although neither this nor any subsequent transfer involved a reduction in pay, O'Connell has produced affidavits from fellow officers indicating that the transfers represented de facto demotions in status and responsibility.

6. This decision was later vacated by the Maryland Court of Special Appeals which, in an unreported opinion, held that the MSPB had no power to hear allegations of retaliation against a police officer and that the LEOBR provided the exclusive remedy.

tire.[7]

## IV.

A public employee may not be deprived of a valuable benefit of employment for exercising his First Amendment rights to free speech. *Connick v. Myers,* 461 U.S. 138, 142, 103 S.Ct. 1684, 1687, 75 L.Ed.2d 708 (1983); *Pickering v. Board of Educ.,* 391 U.S. 563, 574, 88 S.Ct. 1731, 1737–38, 20 L.Ed.2d 811 (1968). In *Hanton v. Gilbert,* 36 F.3d 4 (4th Cir.1994), the U.S. Court of Appeals for this Circuit set out the relevant analysis:

> In order to establish a retaliatory discharge claim under the First Amendment, a public employee must meet a two-pronged test. First, to trigger First Amendment protection, the speech at issue must relate to matters of public interest, *Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708 (1983), and the employee's interest in First Amendment expression must outweigh the employer's interest in efficient operation of the workplace. *Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968). Second, the employee must demonstrate that his protected speech was a substantial factor in the employer's termination decision. *Mt. Healthy City [School District] Board of Education v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977).

36 F.3d at 6–7.

The district court determines, as a preliminary matter, whether the speech involves a matter of public interest or concern. Unless that threshold is crossed, the case is at an end. *See Holland v. Rimmer,* 25 F.3d 1251, 1255, n. 11 (4th Cir.1994).

Case law establishes that "public concern" is a term of art, meaning something more than mere inherent interest in or importance of the speech. As the Fourth Circuit observed in *DiMeglio v. Haines,* 45 F.3d 790 (4th Cir.1995) (quoting *Terrell v. University of Texas, Sys. Police,* 792 F.2d 1360, 1362 (5th Cir.1986), *cert. denied* 479 U.S. 1064, 107 S.Ct. 948, 93 L.Ed.2d 997 (1987):

> Because almost anything that occurs within a public agency could be of concern to the public, we do not focus on the inherent interest or importance of the matters discussed by the employee. Rather, our task is to decide whether the speech at issue in a particular case was made primarily in the plaintiff's role as citizen or primarily in his role as employee. In making this determination, the mere fact that the topic of the employee's speech was one in which the public might or would have had a great interest is of little moment.

45 F.3d at 805.

*DiMeglio* does no more than echo the Supreme Court in *Connick:*

> [W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

461 U.S. 138, 147, 103 S.Ct. 1684, 1690.

*Connick* requires the Court to examine the statements on the basis of their "content, form and context ... as revealed by the whole record," 461 U.S. at 147, 103 S.Ct. at 1690. Although the *Connick* Court did not elaborate on the relative weight to be accorded these three factors, the Fourth Circuit has held that "content, subject-matter, is always the central aspect." *Arvinger v. Mayor and City Council of Baltimore,* 862 F.2d 75, 79

---

7. O'Connell elected to retire under the County's Retirement Incentive Program, whereby eligible employees receive, in addition to their normal retirement benefit, a lump sum payment equal to 100% of their final annual earnings. In so doing, he signed a written acceptance of the benefit under oath, attesting that he had an opportunity to review the offer for 45 days and to consult with an attorney concerning it, that he understood the terms and significance of the program and that he was participating of his own free will. Despite these facts and the fact that O'Connell has never returned the funds to Montgomery County, he maintains that his retirement was involuntary.

The Court notes that O'Connell's salary at retirement was actually higher by reason of his reassignment to the Duty Commander Section than it would have been had he remained a District Commander.

(4th Cir.1988) (quoting *Jackson v. Bair,* 851 F.2d 714, 720 (4th Cir.1988)). On the other hand, the "context of what actually occurred" may cause allegations otherwise appearing to be of public interest to be more properly seen as essentially "a private matter between an employer and employee." *See e.g. Dennison v. County of Frederick, Virginia,* 921 F.2d 50, 54 (4th Cir.1990). More than the subjective intent of the employee is involved; the court must consider the totality of the circumstances.

## V.

■ It is important to be clear about the speech O'Connell contends is entitled to protection and the retaliatory acts allegedly taken in response thereto.

First, he is quite correct that whether or not he prevailed in his claim that the selection process for the position of Deputy Chief violated Montgomery County MSPB law and regulations is irrelevant. The speech he seeks to protect is that which surrounded his pursuit of the claimed violation. He contends that commentary going to the integrity of the process for selecting top law enforcement personnel is a matter of public concern. The retaliatory act said to follow that speech was O'Connell's transfer from District Commander of the Germantown station to the non-supervisory role of Department Labor Relations Officer.

The second expression for which O'Connell seeks protection is his posting on his office door the circuit court order affirming the MSPB's denial of the County's claim that the MSPB lacked jurisdiction over O'Connell's initial retaliation complaint. In consequence of that act, O'Connell maintains, he was transferred to the Field Services Bureau, Duty Commander Section, with a permanent midnight shift for 10 hours a day, 4 days a week, including weekends.

The Court will assume, for present purposes, that O'Connell's initial speech made in connection with alleged manipulation of the examination is not subject to issue preclusion.[8] The core question remains whether both the initial and the later speech arose primarily in O'Connell's role as an employee acting in a matter of personal interest or as a citizen speaking upon a matter of public concern. The Court concludes that the speech was primarily related to O'Connell's personal employment; he was not, as required by the case law, a citizen speaking upon a matter of public concern.

It is undoubtedly true that the public would have considerable interest in the selection of the best qualified candidate for Deputy Chief of its police force. Accordingly it may also be assumed that the public would be interested in total regularity with regard to the County's selection process for that office, including a system free of any improper manipulation of the candidates' ratings.[9] At the same time it is obvious from the content of O'Connell's speech, as reflected in the language of both the grievance and the lawsuit, that what he was engaged in essentially concerned his nonpromotion to the rank of Deputy Chief. *See Ferrara v. Mills,* 781 F.2d 1508, 1516 (11th Cir.1986) ("a public employee may not transform a personal grievance into a matter of public concern by invoking a supposed popular interest in the way public institutions are run").

The form and context of the speech clearly buttress this conclusion. Again, O'Connell was filing a grievance and lawsuit as a disappointed applicant. He was not primarily a citizen attempting to promote public debate over perceived departmental abuses. If

---

**8.** A strong case for issue preclusion can be made as to this speech, since the MSPB expressly determined the issue of whether Defendant Edwards acted in retaliation for O'Connell's having brought a challenge to the examination. *See University of Tennessee v. Elliott,* 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986) (federal courts must give the same preclusive effect to state agency's fact-finding that state's own courts would give when state agency was acting in judicial capacity); *Layne v. Campbell County Dept. of Social Services,* 939 F.2d 217 (4th Cir. 1991) (preclusive effect given to decision of county administrative panel in employee grievance

proceeding); *Batson v. Shiflett,* 325 Md. 684, 602 A.2d 1191 (1992). On the other hand, even if such preclusion were found, to the extent that later acts of retaliation might have occurred, the circumstances of the earlier episode would still be relevant and admissible insofar as they might illuminate the later events.

**9.** The Court acknowledges the local press coverage with regard to the allegations made by O'Connell and other unsuccessful candidates for the position of Deputy Chief.

there were any doubt about this, O'Connell's explanation regarding his posting of the court order on his office door sharply negates the issue as one of public concern:

> I represented myself in Circuit Court and I am sure you remember that day, because you lost and I won; and I probably displayed that on my office door, that Judge Ryan's decision, at police headquarters.
>
> And that office opened out into another private office at police headquarters. My office was basically located inside the Office of Internal Affairs, and I felt excited about winning that, because I figured now I'd finally get a hearing at the Merit Board; but I guess Montgomery County couldn't stand to lose, so Montgomery County appealed that decision to the Court of Special Appeals.
>
> \*　\*　\*　\*　\*　\*
>
> But I felt very proud that Judge Ryan sided with me in that decision, and I hung that decision on the office there at headquarters, on the door.

O'Connell, in other words, proud of his accomplishment, displayed his "victory" in a private area at police headquarters inside the Office of Internal Affairs. These actions clearly bespoke a personal and private, not a public, concern.

The Court's inquiry, therefore, is at an end. *Holland v. Rimmer*, 25 F.3d at 1255, n. 11. O'Connell has not made a case according to the demanding standards of *Connick*, *Pickering* and their progeny. The Court will grant Defendants' Motion for Summary Judgment with regard to Count I.[10]

### VI.

■ Count III of O'Connell's complaint alleges a violation of Article 27, § 733 of the *Maryland Code.* That section provides that an officer "may not be discharged, disciplined, demoted, or denied promotion, transfer, or reassignment, or otherwise discriminated against in regard to his employment or be threatened with any such treatment, by reason of his exercise of or demand for the rights granted in this subtitle, or by reason of the lawful exercise of his constitutional rights." To the extent that a claim under the statute alleges retaliation for the lawful exercise of constitutional rights, it is *in pari materia* with the federal employee free speech claim. *See e.g. DiGrazia v. County Executive*, 288 Md. 437, 418 A.2d 1191 (1980). Since the Court has determined that O'Connell has stated no First Amendment claim, his cause of action under Count III must also fall.[11]

A separate Order implementing this Opinion will issue.

### FINAL ORDER

Upon consideration of Defendants' Motion for Summary Judgment and Plaintiff's Opposition thereto, oral argument having been held thereon, for the reasons stated in the accompanying Opinion, it is this 30th day of April, 1996

ORDERED that Defendants' Motion for Summary Judgment is hereby GRANTED; and it is further

ORDERED that final judgment is hereby ENTERED in favor of Defendants and against Plaintiff.

---

**10.** Thus the Court does not reach the issue of whether the referenced incidents of speech, taken separately or together, were substantial factors resulting in the denial of a valuable benefit to O'Connell. Even if they were and even if Chief Edwards' actions towards O'Connell were viewed as heavy-handed, O'Connell's cause of action in this Court is to remedy a denial of his constitutional right to free speech, not to remedy unfair or unjust treatment by a supervisory officer.

**11.** In his Order of August 17, 1993, Judge Garbis noted that O'Connell had withdrawn his claim for monetary relief under this statute. The Court would further observe that the only remedy provided under the statute is the right to apply to the circuit court of the county where the aggrieved person is regularly employed for an order directing the law enforcement agency to show cause why the right in issue should not be afforded. *See Maryland Code*, Article 27, § 734. A serious question exists, therefore, whether a federal court has authority to entertain an action under the statute. Given the Court's decision on the merits, however, the question is moot.