**Richard MUTSCHLER, Plaintiff,**

**v.**

**HOUSING AUTHORITY OF the CITY OF RALEIGH, NORTH CAROLINA et al., Defendants.**

No. 5:95–CV–626–H–1.

United States District Court,
E.D. North Carolina,
Western Division.

Feb. 20, 1997.

Joyce L. Davis, Raleigh, NC, for Plaintiff.

Raymond M. Davis, Dan M. Hartzog, Cranfill, Sumner & Hartzog, Raleigh, NC, for Defendants.

## ORDER

MALCOLM J. HOWARD, District Judge.

This matter is before the court on defendants' motion for summary judgment. On December 26, 1996, United States Magistrate Judge Wallace W. Dixon filed a Memorandum and Recommendation ("M & R") and order. The magistrate judge recommended that defendants' motion for summary judgment be granted as to all claims except plaintiff's pendent state claims. As to these claims, Judge Dixon recommended that they be remanded to the Superior Court of Wake County. The plaintiff then filed objections to the M & R. This matter is ripe for ruling.

## STATEMENT OF THE CASE

A meticulous and well-written statement of the facts is contained in Judge Dixon's M & R. Plaintiff commenced this action against the defendants on June 21, 1995, in Wake County Superior Court alleging that he was discharged from his employment with the Raleigh Housing Authority in violation of, among other things, his First and Fourteenth Amendment rights under the United States Constitution, 42 U.S.C. §§ 1983 and 1985, and North Carolina constitutional and statutory law. On July 21, 1995, defendants properly removed the case to this court pursuant to 28 U.S.C. § 1441(b).

Plaintiff was employed by the Raleigh Housing Authority ("RHA") as a mechanic from 1978 until March 29, 1993. The RHA runs low income, public housing complexes in Raleigh, North Carolina. As part of his job responsibilities, plaintiff was primarily assigned to work on the boiler systems in three of the larger housing complexes, including the Walnut Terrace Apartments. On or about October 10, 1992, Lorraine Denise Hinton, age 30, and her infant son were found dead in their apartment at Walnut Terrace. It was ultimately determined that the cause of death was carbon monoxide poisoning that leaked into their apartment as a result of problems with the boilers.

Plaintiff alleges that he was fired in retaliation after he repeatedly warned his superiors at the RHA as early as February 1992, about boiler problems at Walnut Terrace. Moreover, plaintiff's name and memos that he had written to the RHA officials concerning boiler problems prior to the two deaths appeared in several newspapers and news reports on television. Towards the end of February 1992, plaintiff gave an interview to the Raleigh News and Observer detailing how he had pointed out the problems with the boilers since the time the boilers were installed in 1987 and how he had requested the proper equipment to tune the boilers, but was denied such by the RHA.

In December 1992, the RHA Board of Commissioners ("the Board") and the City of Raleigh authorized an independent investigation into the two deaths. Raleigh attorney, and former state superior court judge, Howard E. Manning, Jr., was selected to conduct the investigation. In Judge Dixon's M & R, he outlines at length specific portions of the Manning Report wherein Manning found numerous problems and deficiencies in the maintenance of the boilers since their installation in 1987. One relevant portion of the Manning Report indicated that:

> Management is not only responsible for the actions of the Raleigh Housing Authority, it is also accountable .... While fingers can be pointed down at particular employees of the Raleigh Housing Authority in this matter, accountability for their actions cannot be avoided at all levels. Accountability for the tragedy at 915 Fayetteville Street rests, in my opinion, all the way from the top to the bottom of the Raleigh Housing Authority.

Manning Report, Discussion at 1–2.

On the morning that the Manning Report was issued, March 26, 1993, Floyd Carter tendered his resignation as executive director of the RHA. Defendant Steve Beam was soon after appointed interim director of the RHA and was then advised by the Board to immediately suspend any employee involved in the neglect of the boilers at Walnut Terrace. After reviewing the Manning Report and other materials, he made the decision to

terminate both the plaintiff and Tom Norris, who was plaintiff's immediate supervisor as assistant director of maintenance at the RHA.

Beam recites several reasons for his decision to terminate plaintiff including: (1) plaintiff's failure to perform necessary and proper routine maintenance on the boilers at Walnut Terrace; (2) failing to assist other RHA employees in the location of equipment used in the maintenance of the boilers that was found in a warehouse; (3) plaintiff impermissibly maintaining a stockpile of equipment in violation of inventory and warehouse procedures; and (4) plaintiff's "negative attitude toward the performance of [his] job responsibilities." Beam Aff. Ex. D. Plaintiff's termination letter specifically denied that the negative employment action against him was due to any "whistleblowing" on the part of plaintiff.

Thereafter, plaintiff sued alleging, among other things, that he was fired in violation of the First Amendment for his cooperation with the news and print media after the two deaths. Defendants counter that plaintiff was fired for legitimate employment decisions and ask the court for summary judgment in their favor on all of plaintiff's claims. Plaintiff objects to the M & R on several grounds.

## I. *Standard of Review*

Summary judgment is authorized by Rule 56 of the Federal Rules of Civil Procedure. Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The inferences to be drawn from the underlying facts are to be viewed in the light most favorable to the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

### A. *Plaintiff's First Amendment Claim*

Plaintiff contends that he was impermissibly fired from his job after, and as a result of, his speaking out in public about the RHA's pre-death knowledge of boiler problems at Walnut Terrace in violation of the First Amendment to the United States Constitution. As a public employee, plaintiff cannot be fired in retaliation for exercising his rights under the First Amendment. *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Hughes v.. Bedsole,* 48 F.3d 1376 (4th Cir.1995).

 In determining whether a public employer unconstitutionally discharged a public employee for protected speech, the court must undertake a balancing test. The public employee has the initial burden of showing that the protected speech: (1) involved a matter of public concern, and the employee's interest in the protected speech outweighed the employer's interest in efficient operation of the workplace, and (2) was a "substantial" or "motivating" factor in the employer's termination decision. *Hughes v. Bedsole,* 48 F.3d 1376, 1385 (4th Cir.1995); *Hanton v. Gilbert,* 36 F.3d 4, 6–7 (4th Cir. 1994). If an employee meets this initial burden, the burden shifts to the public employer to show by a preponderance of the evidence that the employer would have made the same negative employment decision even in the absence of the protected speech. *Hughes,* 48 F.3d at 1386.

 The court agrees with Judge Dixon that even if the plaintiff's speech were protected as a matter of public concern, plaintiff has failed to show that this speech was the cause of his discharge. Judge Dixon concluded that plaintiff cannot demonstrate the necessary causation factor to prevail on his First Amendment claim. Judge Dixon stated, without deciding, that even if plaintiff could show that his speech was a motivating factor in his termination, defendants have sufficiently shown that plaintiff's discharge would have occurred regardless of his speech. In other words, plaintiff failed to show that he would not have been discharged "but for" his speech as required in the

Fourth Circuit. *See Daniels v. Quinn,* 801 F.2d 687, 689 (4th Cir.1986).

Moreover, the court finds that based on the reasoning contained in the M & R, plaintiff has failed to show that his speech was a "substantial" or "motivating" factor in his discharge, a prong Judge Dixon assumed plaintiff could satisfy. Plaintiff contends that Beam's pretextual reliance on the Manning Report creates a jury question of his reasons for discharging plaintiff as any inaccuracies in the report were deemed irrelevant by Judge Dixon. These inaccuracies, plaintiff continues, indicate that any alleged reliance of Beam on the Manning Report evidence a lack of good faith on his part.

The court disagrees with plaintiff's contentions and finds that the Manning Report, prepared by a neutral and detached investigator, provides more than a sufficient basis for Beam to have dismissed plaintiff. The report indicates that severe internal problems existed within the RHA at all levels. It was Beam's prerogative, if he so decided, to make a clean sweep of the RHA in his attempt to remedy any insufficiencies he deemed to exist in the RHA. Indeed, Beam was compelled to do so to prevent future tragedies like the one caused by the faulty boilers.

Plaintiff has simply failed to show a genuine issue of material fact as to whether defendants were motivated by, or whether defendants' actions would have occurred "but for", plaintiff's communications with any third persons. Therefore, the court concurs in the M & R that defendants are entitled to summary judgment as a matter of law on plaintiff's First Amendment claims.

B. *Plaintiff's Remaining Pendent State Law Claims*

As to plaintiff's remaining pendent state claims, the court agrees with Judge Dixon that any claim plaintiff may have under the North Carolina Constitution or under North Carolina case law for dismissal in violation of North Carolina public policy would be more appropriately decided in the state forum. Thus, since plaintiff's federal claims have been dismissed, the court, in its discretion, remands plaintiff's remaining claims to the Superior Court of Wake County for adjudication.

### CONCLUSION

Upon a full and careful review of the M & R, all available court documents, and the plaintiff's and defendants' responses, the court has decided that the findings and conclusions of the magistrate judge are in all respects proper and in accordance with the law. Therefore, the court hereby ADOPTS the M & R as its own. It is therefore ordered that defendants' motion for summary judgment is GRANTED as to all of plaintiff's claims except those pendent state claims under the North Carolina Constitution against the RHA and Beam, in his official capacity, and plaintiff's state claim for wrongful discharge in violation of North Carolina public policy. The clerk is directed to remand the case to Wake County Superior Court.