# Vincent Furno v. James Pignona, et al.

[522 A.2d 746]

No. 84-153

Present: **Allen, C.J., Hill, Peck,**[1] **Gibson and Hayes, JJ.**

Opinion Filed December 19, 1986

---

[1] Justice Peck sat at oral argument, but did not participate in the decision.

*Michael T. Schein* of *Hoff, Wilson, Powell & Lang, P.C.*, Burlington, for Plaintiff-Appellee.

*David A. Barra* of *Paul, Frank & Collins, Inc.*, Burlington, for Defendants-Appellants.

*Jeffrey L. Amestoy*, Attorney General, *J. Wallace Malley, Jr.*, Assistant Attorney General, and *Patricia Hackett Gaston*, Law Clerk (On the Brief), Montpelier, for intervenor State.

**Hill, J.** This appeal arises out of an employment contract dispute. Plaintiff-appellee, Vincent Furno, brought suit against defendants-appellants, City of St. Albans and City Manager James Pignona, alleging, inter alia, breach of contract and unlawful termination in violation of 42 U.S.C. § 1983. The jury found the defendants liable on both counts and awarded the plaintiff $31,130 compensatory damages and $10,000 punitive damages. The trial court denied defendants' post-trial motions and entered judgment on the verdict. From this judgment, all three parties have appealed. We affirm.

Plaintiff was hired in 1975 by the City of St. Albans as Director of the newly created Office of Community Development. Although the exact terms of plaintiff's employment contract were not reduced to writing, he was apparently hired for as long as federal monies remained available to fund the office.

When plaintiff was hired he received a copy of the City's Personnel Rules and Regulations and was told that they applied to him. The rules provide that employees are subject to dismissal for

just cause, and set out the procedures to be followed when grievances arise.

Defendant Pignona became City Manager in the summer of 1978. He was not aware of, nor did he inquire into, the specifics of plaintiff's employment contract. Instead he chose to treat plaintiff as a department head. Department heads serve one-year terms at the will of the City Manager.

In 1979 and 1980 plaintiff signed certificates of appointment which, according to defendants, contained clauses acknowledging plaintiff's department head status. Plaintiff denied any such acknowledgment, claiming that he was fraudulently induced to sign the certificates without being shown the one-year appointment language and without being advised of the purpose of the signatures.

Defendant Pignona became increasingly dissatisfied with plaintiff's performance, and sometime during the fall of 1980, notified plaintiff that he would not be reappointed. Plaintiff repeatedly asserted that he could only be terminated pursuant to the City's Personnel Rules and Regulations, and that he was therefore entitled to written notice and a hearing before the City Council. Defendant Pignona disagreed; he contended that plaintiff was a department head appointed for a one-year term, relying on his course of dealings with the plaintiff and the certificates of appointment referred to above. Plaintiff was terminated in 1981 and this suit followed.

Defendants raise a number of issues on appeal. First, they contend that plaintiff's action is barred because he failed to exhaust his administrative remedies. Second, defendant Pignona claims that he acted in good faith and, as a municipal officer, is immune from suit. Both defendants challenge the legal basis underlying the punitive damage award. They also contend that the trial court was improperly constituted. Plaintiff's cross-appeal concerns only the amount of the jury's compensatory damage award.

## I.

Defendants contend that plaintiff's failure to file a written request for a hearing with the City Council as was required by the applicable grievance procedure constitutes a bar to this action. We cannot agree.

■ As a general rule:

[A]n employee subject to a collective bargaining agreement, who has a grievance within the scope of that agreement's grievance and arbitration procedure, must exhaust the remedies available under that agreement before he may maintain a suit against his employer.

*Burkhart* v. *Mobil Oil Co.*, 143 Vt. 123, 126, 463 A.2d 226, 228 (1983); see also *Morton* v. *Essex Town School District*, 140 Vt. 345, 348-49, 443 A.2d 447, 449 (1981). Nevertheless, a recognized exception to the exhaustion requirement exists "when the conduct of the employer amounts to a repudiation of those contractual [grievance] procedures." *Vaca* v. *Sipes*, 386 U.S. 171, 185 (1967).[2] When an employer fails or refuses to perform actions required of it under contract and thus prevents the employee from complying therewith, the employer is estopped from asserting as a defense the failure of the employee to comply with the contract. *Andrews* v. *Victor Metal Products Corp.*, 239 Ark. 763, 765-66, 394 S.W.2d 123, 124 (1965); see also *Boone* v. *Armstrong Cork Co.*, 384 F.2d 285, 289 (5th Cir. 1967) ("refusal [of employer] to abide by contractual terms requiring the processing of a matter through a grievance procedure" constitutes a repudiation of the procedure, waiving the requirement of exhaustion); Annot., 72 A.L.R.2d 1439, 1449-51 (1960). For example, in *Andrews, supra*, the employer failed to give the employee a written statement of the reason for the discharge within 24 hours, as was required by the contract. The court held that "[i]nasmuch as [the employer's] breach of the contract prevented [the employee] from asserting her grievance with the certainty that she should have had, the [employer] cannot complain of [the employee's] election to seek redress in court." *Andrews*, 239 Ark. at 765-66, 394 S.W.2d at 124.

This exception to the exhaustion doctrine is clearly applicable here. Under the applicable personnel rules and regulations,[3] the provisions relating to disciplinary action provide:

---

[2] Although it has been observed that this part of the opinion in *Vaca* is dictum, *Vaca*, 386 U.S. at 199-200 (Fortas, J., concurring), the Supreme Court as well as lower federal and state courts have recognized and applied the exceptions to the exhaustion requirement discussed in *Vaca*. See, e.g., *Glover* v. *St. Louis-San Francisco Railway*, 393 U.S. 324, 329-31 (1969); *Kaylor* v. *Crown Zellerbach, Inc.*, 643 F.2d 1362, 1366 (9th Cir. 1981); *Balsavich* v. *Local 170 of International Brotherhood of Teamsters*, 371 Mass. 283, 286, 356 N.E.2d 1217, 1220 (1976).

[3] The evidence at trial clearly supports the conclusion that before plaintiff filed this action, defendant Pignona at all times maintained that the City's Personnel

542

(B) *Procedure*: 1(A)—2(A)—3(A)
Employee to be notified by registered or certified mail by
City Manager of cause for . . . Dismissal, date infraction in-
curred . . . .

The grievance procedure, which appears in the contract just be-
low the above-quoted notification provision, provides a three-step
procedure for appeal of adverse personnel decisions, including
discharges. First, the employee must attempt informal resolution,
followed by a written grievance to be filed with the department
head if informal resolution is not achieved. If unsatisfied at this
point, the employee may submit the grievance in writing to the
City Manager. Thereafter, if still unsatisfied, the employee may
request, in writing, that the City Manager bring the matter before
the City Council, which acts as a Personnel Board for purposes of
employee grievances of this type.

 Plaintiff orally requested written notice of his termination
stating the reasons for his dismissal and a hearing before the City
Council,[4] and he at all times maintained that he could only be
terminated pursuant to the City's Personnel Rules and Regula-
tions. Defendant Pignona considered plaintiff to be a department
head who served subject to the City Manager's approval, and he
told plaintiff that the City's rules were not applicable. Consistent
with these assertions, the plaintiff was never given the required
written notice of the cause for his dismissal. Under these circum-
stances, we must conclude that the employer breached the con-
tract first, and that the effect of its breach was to relieve the em-
ployee from the exhaustion requirement.

The clear purpose of the written notice requirement is to give
an employee the information upon which he may choose to base
an appeal of the adverse personnel decision. "This clause in the
agreement affords substantial protection to the employee, for it

Rules and Regulations did not apply to plaintiff because of his status as a de-
partment head. It was only after the institution of this litigation that defendant
took the position, which is now binding upon him, that the Rules and Regula-
tions govern the plaintiff's employment.
[4] We note here that the trial court instructed the jury:
 [I]f you find the Plaintiff was given notice and a hearing or that Plaintiff
 failed to initiate the proper steps to get a hearing, then your verdict must
 be for the defendant.
Thus, the issue as to whether the plaintiff attempted to invoke the grievance
procedure was before the jury, and the jury ruled in plaintiff's favor.

compels the employer to make a statement, in black and white, that the employee may then lay before the grievance committee." *Andrews*, 239 Ark. at 765, 394 S.W.2d at 124. In this case, the employer's failure to act deprived the employee of the benefits of the required written notice, and it cannot now assert the employee's failure to exhaust his administrative remedies as a bar to this action in the face of its own repudiation of the contract. *Vaca*, 386 U.S. at 185. Consequently, plaintiff's failure to file a written request for a hearing cannot be held to be a bar to this action.

## II.

■ We turn next to defendant Pignona's claim that he is immune from suit because he acted reasonably and in good faith in relying on the signed certificates of appointment when he dismissed plaintiff. See *Harlow* v. *Fitzgerald*, 457 U.S. 800, 818 (1982) ("government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."). Plaintiff contends, and we agree, that this claim is not properly before this Court as defendant raised the issue for the first time in his motion for judgment notwithstanding the verdict. See *Addison County Automotive, Inc.* v. *Church*, 144 Vt. 553, 560, 481 A.2d 402, 406 (1984) (" 'legal issues [must] be raised on motion for directed verdict at the close of all the evidence in order to be challenged later by way of judgment notwithstanding the verdict' ") (quoting *Lent* v. *Huntoon*, 143 Vt. 539, 551, 470 A.2d 1162, 1170 (1983)); see also V.R.C.P. 50(b) (within 10 days after jury has been discharged, party may move for judgment notwithstanding the verdict *in accordance with his motion for directed verdict*) (emphasis added). Inasmuch as defendant did not properly raise the issue below, he is not entitled to have it considered here on appeal.

## III.

Defendants next challenge the legal basis for the jury's punitive damage award. They rightly point out that in order to recover punitive damages a party must make a showing of actual malice. See *Lent*, 143 Vt. at 550, 470 A.2d at 1170. Defendants then argue

that the trial court found for them on this issue when it directed a verdict against plaintiff on his defamation count for failing to establish "malice."

■ In *Lent*, we noted that the malice required for a public figure to make out a cause of action for defamation is different from the showing of malice required to support a punitive damage award. *Id.* at 551 n.4, 470 A.2d at 1171 n.4. The malice required by the First Amendment to the United States Constitution in defamation cases involving public figures is established by showing a deliberate or reckless disregard for the truth. See, e.g., *New York Times Co.* v. *Sullivan*, 376 U.S. 254, 279-80 (1964). The malice required to support a punitive damage award, on the other hand, " 'may be shown by conduct manifesting personal ill will or carried out under circumstances evidencing insult or oppression, or even by conduct showing a reckless or wanton disregard of one's rights.' " *Lent*, 143 Vt. at 550, 470 A.2d at 1170 (quoting *Shortle* v. *Central Vermont Public Service Corp.*, 137 Vt. 32, 33, 399 A.2d 517, 518 (1979)). The trial court's ruling on plaintiff's defamation action is thus not dispositive of the malice issue in a punitive damage context.

■ When reviewing a motion for judgment notwithstanding the verdict, we must view the evidence in the light most favorable to the nonmoving party and exclude the effect of modifying evidence. *Id.* at 551-52, 470 A.2d at 1171. Applying this standard, we find ample evidence to support the jury's punitive damage award. The jury could have found that defendant Pignona deliberately disregarded plaintiff's right to notice and hearing. It also could have found that defendant Pignona acted in bad faith by inducing plaintiff to sign certificates of appointment without attaching the status acknowledgment clause or explaining their purpose. In either case, the record revealed conduct that evidenced a wanton or reckless disregard for plaintiff's rights. Consequently, the trial court's denial of defendants' motion for judgment notwithstanding the verdict will not be disturbed on appeal.

## IV.

Finally, defendants ask us to reverse the lower court because an assistant judge who was physically present in the courthouse was ruled to be unavailable for trial. The presiding judge reasoned that the assistant judge was unavailable because conflicting ad-

ministrative and judicial duties precluded her from being present for the duration of the trial.

As defendants rightly point out, the power of a court to hear a case is dependent upon it being properly constituted, which is controlled by statute. See *Vermont Union School District No. 21 v. H. P. Cummings Construction Co.*, 143 Vt. 416, 422, 469 A.2d 742, 746 (1983). Compliance with the applicable provision is a jurisdictional prerequisite; absent such compliance, the court is without jurisdiction and any orders it issues are void. *Id.*

The statute in effect at the time of trial provided:

> A presiding judge of the superior court may try and determine a cause pending in that court, when the other judges are disqualified or are otherwise unavailable to try the same.

4 V.S.A. § 112 (subsequently amended). Defendants contend that "unavailability" is a factual question. They argue that the assistant judge was physically present in the building and therefore available to sit on their case. If she then became unavailable, she could absent herself and the trial court could proceed without prejudice. See *Cummings*, 143 Vt. at 421-22, 469 A.2d at 746.

We agree with the defendants in part; unavailability is factual absence as opposed to legal disqualification. We decline to adopt, however, a standard that equates physical presence with availability. Conflicts will inevitably arise; judges must be allowed a certain latitude in making necessary choices between conflicting judicial or administrative duties.[5]

This is not to say that side judges can simply declare themselves to be unavailable for whatever reason. Both parties predicted the trial to last approximately four days. Due to conflicting administrative and judicial duties the assistant judge was unable to be present after the third day of trial. The presiding judge is-

---

[5] Although we recognize that it is inapplicable here, we note that the legislature recently amended 4 V.S.A. § 112. The statute now provides in pertinent part:

> [A]ssistant judges physically present in the courthouse shall determine whether they are available for the case.

4 V.S.A. § 112(d). Defendants claim that the extensive revision of § 112 indicates a legislative intention to change the law. See, e.g., *Jones v. Department of Employment Security*, 140 Vt. 552, 555, 442 A.2d 463, 464 (1982). The statute in effect prior to this amendment, however, nowhere explained how the issue of unavailability was to be resolved. Thus, the amendment seems to indicate an intention to clarify rather than change existing law.

sued a short statement explaining this conflict and ruled that she was "otherwise unavailable." Nothing more is required.

## V.

On cross-appeal, plaintiff argues that the jury's compensatory damage award is unsupported by the evidence and is the result of a compromise verdict. Defendants contend that the jury could have taken into consideration plaintiff's failure to mitigate his losses in arriving at its verdict and that therefore its damage award must be affirmed.

In reviewing plaintiff's claim of error, this Court must afford the jury broad discretion, taking "the facts bearing on this question in a light favorable to the verdict as approved by the trial court." *Kerr* v. *Rollins*, 128 Vt. 507, 510, 266 A.2d 804, 806 (1970).

Upon a careful review of the record in light of the standard recited above, we are unable to conclude that the verdict is unsupported by the evidence. The evidence of plaintiff's failure to mitigate was concededly sparse. It was sufficient, nevertheless, to warrant the trial judge's instruction on the issue.[6] Since plaintiff's failure to mitigate was properly before the jury, and we cannot determine how it factored into the jury's award, the jury's damage award must stand.

## VI.

At the conclusion of this case, plaintiff moved for attorney's fees and costs. See 42 U.S.C. § 1988 (In any action to enforce 42 U.S.C. § 1983 "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."). Under the so-called "Newman-Northcross Rule," the prevailing party in a civil rights action "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Newman* v. *Piggie Park Enterprises, Inc.,* 390 U.S. 400, 402 (1968); *Northcross* v. *Board of Education,* 412 U.S.

---

[6] The trial judge instructed the jury:

> Plaintiff had a duty to mitigate the extent of his damages by making a good faith effort to find employment. If you find Plaintiff made such an effort, then he is entitled to recover the full extent of damages from the Defendants. If, on the other hand, you find Plaintiff failed to make an effort to mitigate his damages, then you must take that fact into consideration in arriving at the amount of damages, if any, you award.

427, 428 (1973). The trial court issued an order allowing plaintiff's motion. This order has not been challenged on appeal. Plaintiff now requests an order awarding him his costs, including attorney's fees, on appeal.

■ Plaintiff is clearly the prevailing party. Although he did not prevail on his cross-appeal concerning damages, the underlying judgment has been sustained on the merits. Thus, plaintiff's attorney is entitled to a reasonable fee for his appellate work. See *Bonner* v. *Coughlin*, 657 F.2d 931, 935 (7th Cir. 1981) (fee awards for appellate work are generally appropriate where plaintiff has prevailed in case); *Souza* v. *Southworth*, 564 F.2d 609, 613 (1st Cir. 1977) (District Court has power to award attorney's fees for work performed in Court of Appeals).

The defendants' good or bad faith is irrelevant. *Hutto* v. *Finney*, 437 U.S. 678, 699 n.32 (1978) ("The Act authorizes an attorney's fee award even though the appeal was not taken in bad faith . . . ."). Moreover, the United States Supreme Court has expressly stated that attorney fees are available in cases where, as here, "the plaintiff prevails on a wholly statutory, non-civil-rights claim pendent to a substantial constitutional claim . . . ." *Maher* v. *Gagne*, 448 U.S. 122, 132 (1980).

Although an appellate court "might be in the best position to assess the importance and complexity of a case on appeal and the quality of the performance by the attorneys that appear before it, other factors going into a fee determination require factual findings . . . ." *Souza*, 564 F.2d at 613. Consequently, we remand this case to the superior court for a hearing on costs, including a reasonable attorney's fee incurred in briefing and arguing this appeal.

*Judgment affirmed; cause remanded for hearing on costs.*