### William Rich and Montpelier Education Association v. Montpelier Supervisory District, et al.

[709 A.2d 501]

No. 97-010

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed January 23, 1998

*Devin McLaughlin* of *Langrock Sperry & Wool*, Middlebury, and *Donna Watts*, Vermont-NEA, Montpelier, for Plaintiffs-Appellants.

*Robert McKearin* of *Dinse, Erdmann, Knapp & McAndrew, P.C.*, Burlington, for Defendants-Appellees.

**Johnson, J.** William Rich appeals a summary judgment order by the Washington Superior Court (1) upholding the decision of the Montpelier School Board to nonrenew his contract as a probationary teacher and, (2) determining that the Superintendent of the Montpelier Supervisory District is entitled to qualified immunity from Rich's civil rights claims. We affirm in part, reverse in part, and remand for further proceedings.

Rich taught seventh-grade science and language arts as a probationary teacher at the Main Street Middle School in Montpelier for the 1992-93 and 1993-94 school years. Rich's employment contract was governed by a collective bargaining agreement (Agreement) between the Montpelier Education Association, the teachers' union, and the board. In the event a teacher's contract was not to be renewed for the following year, the Agreement required that the teacher be given notice of the nonrenewal by March 15, and provided the teacher with the right to a hearing before the board.

On March 15, 1994, Rich attended a meeting with the superintendent to discuss his contract and to address several issues that the superintendent believed warranted its nonrenewal. The meeting culminated in an agreement to extend the deadline for the renewal of Rich's contract by six weeks, to provide an opportunity for Rich to resolve the issues through negotiation with the school principal. Later the same day, however, Rich informed the superintendent that he would not honor the agreement. The superintendent then sent Rich a letter, dated March 15, informing him that his contract would not be renewed. The March 15 letter also stated that Rich's contract was not renewed because of concerns about his judgment and self-control.

Rich requested a hearing before the board on May 3. The board denied the request as untimely, and Rich brought this suit seeking a determination that he is entitled to the renewal of his contract as well as damages for alleged violations of his civil rights. The trial court granted summary judgment in favor of defendants, and this appeal followed.

Rich claims that the trial court erred by (1) holding that his procedural claims are barred for failure to exhaust his administrative remedies under the Agreement, (2) granting summary judgment to defendants on his procedural due process claims, and (3) granting summary judgment to defendants on his civil-rights claims, based on its conclusion that the superintendent was immune from suit.

I.

We first address Rich's contractual claim. Rich does not dispute that he requested a hearing before the board after the deadline provided for in the Agreement. Rather, he argues that the March 15 letter was not notice of nonrenewal within the meaning of the Agreement because the board had not voted to nonrenew Rich before the letter was mailed. Therefore, he argues that the March 15 letter could not have triggered an obligation on his part to request a hearing pursuant to the Agreement. Because the Agreement provides for automatic renewal of a teacher's contract unless the teacher is given notice of nonrenewal, Rich concludes that he is entitled to a teaching contract. We disagree.

It is undisputed that the board did not officially act to nonrenew Rich before the superintendent sent the March 15 letter.* This does not, however, excuse Rich from following the grievance procedure in the Agreement. "[A]n employee subject to a collective bargaining agreement, who has a grievance within the scope of that agreement's grievance and arbitration procedure, must exhaust the remedies available under that agreement before he may maintain a suit against his employer." *Burkhart v. Mobil Oil Corp.*, 143 Vt. 123, 126, 463 A.2d 226, 228 (1983); see also *Morton v. Essex Town Sch. Dist.*, 140 Vt. 345, 348-49, 443 A.2d 447, 449 (1981) (teacher obligated to pursue breach of contract claims through bargained-for-grievance procedure).

Rich's dispute concerning the nonrenewal of his teaching contract falls directly within the scope of the Agreement's grievance procedure. Article 21.9 of the Agreement governs the grievance procedure for probationary employees. It provides that "an individual who is given notice of dismissal or non-reemployment may, within ten (10) days of receiving said notice, request in writing either a Board

---

*In light of today's holding, we need not decide whether notice of nonrenewal is valid under the Agreement when it is given prior to a board decision to nonrenew. See *Morton v. Essex Town Sch. Dist.*, 140 Vt. 345, 348, 443 A.2d 447, 448 (1981) (declining to decide validity of discharge when teacher failed to follow grievance procedure).

hearing or a written statement from the Board giving the reasons for the Board's action." If Rich believed that the notice or procedure of his nonrenewal was not made in accordance with the Agreement, the proper forum for him to challenge their validity was at a hearing before the board in accordance with Article 21.9. See *Ploof v. Village of Enosburg Falls*, 147 Vt. 196, 200, 514 A.2d 1039, 1042 (1986); *Burkhart*, 143 Vt. at 126, 463 A.2d at 228; *Morton*, 140 Vt. at 349, 443 A.2d at 449. Rich failed to comply with the grievance procedure provided for in the Agreement, and such failure is fatal to his claim. See *Ploof*, 147 Vt. at 201-02, 514 A.2d at 1043 (summary judgment proper where plaintiff failed to exhaust administrative remedies and exception to exhaustion requirement did not apply).

Rich next argues that, even if this case is subject to the grievance procedures, he is excused from seeking a hearing before the board because the board repudiated the Agreement by failing to vote before the superintendent sent the March 15 letter. We have recognized an exception to the exhaustion requirement where "an employer fails or refuses to perform actions required of it under contract and thus prevents the employee from complying therewith." *Furno v. Pignona*, 147 Vt. 538, 541, 522 A.2d 746, 749 (1986). Nevertheless, this exception is not applicable here.

Article 22.3 of the Agreement provides in part that "[t]eachers not to be re-employed for the following school year shall be notified, in writing, by March 15." As we stated in *Furno*, "[t]he clear purpose of the written notice requirement is to give an employee the information upon which he may choose to base an appeal of the adverse personnel decision." *Id.* at 542, 522 A.2d at 750. The employee in *Furno* was denied such information when his employer refused to provide him with written notice of termination and the reasons therefore, as required by the contract. Moreover, the employer told the employee that he was not entitled to the grievance procedure. *Id.* at 540, 522 A.2d at 748. Under such circumstances, we held that the employee's failure to file a grievance was not a bar to his lawsuit. In contrast, in the instant case, the March 15 letter articulated the reasons for Rich's nonrenewal and specifically advised him of his right to request a hearing pursuant to Article 21.9 of the Agreement. We cannot agree that Rich was "prevented" from complying with the grievance procedure. Indeed, if Rich wanted to challenge the procedure by which the decision was made, the March 15 letter told him how to do so.

## II.

We turn now to Rich's constitutional claim. Rich argues that the lower court erred in holding that (1) he does not have a property interest in his position because he is a probationary teacher, and (2) even if he had, that the board's procedure afforded him due process.

Relying on *Burroughs v. West Windsor Board of School Directors*, 138 Vt. 575, 420 A.2d 861 (1980), Rich argues that he has a property interest in his teaching position notwithstanding his probationary status. The board argues in response that probationary teachers do not have a property interest in their positions. We need not resolve this issue. Assuming arguendo that Rich does have a property interest in his position, we hold that he received all the process he was due.

■ The essential elements of due process are notice and an opportunity to be heard. See *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). A public employee who has a property interest in his position "is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* The employee must be afforded the opportunity of a hearing "at a meaningful time and in a meaningful manner." *In re Maher*, 132 Vt. 560, 563, 326 A.2d 142, 144 (1974); accord *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (citing *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Teachers have " 'not been denied due process while still employed at the same job and while adequate procedures remain to challenge and forestall' their termination." *Russell v. Harrison*, 632 F. Supp. 1436, 1441 (N.D. Miss. 1986) (quoting *Bignall v. North Idaho College*, 538 F.2d 243, 246 (9th Cir. 1976)). Nevertheless, as we have previously stated, "[t]he right to be heard is worth little unless one . . . can choose 'whether to appear or default, acquiesce or contest.'" *Town of Randolph v. Estate of White*, 166 Vt. 280, 283, 693 A.2d 694, 696 (1997) (quoting *Mullane v. Central Hanover Bank & Trust*, 339 U.S. 306, 314 (1950)). Rich argues that he was deprived of this choice.

■ The undisputed evidence indicates that Rich had notice of the decision to terminate him and the reasons for that decision. In making this determination, we consider not only the contents of the March 15 letter, but also whether Rich had notice from other sources. See *Aronson v. Gressly*, 961 F.2d 907, 909-10 (10th Cir. 1992) (letter stating charges and possible action following several meetings to discuss charges sufficient notice). Having attended the March 15th meeting

to discuss issues concerning the renewal of his contract, Rich had knowledge of his potential nonrenewal and the reasons why nonrenewal was being considered. Rich received the March 15 letter in response to his decision to reject the proffered negotiation. The letter stated, "I am writing to notify you that you will not be receiving a contract for employment for the 1994-95 school year . . . your duties as a classroom teacher will expire as of June 30, 1994." Under these circumstances, we agree with the trial court that Rich had adequate notice that he would not receive a new contract and the reasons for this decision. See *In re Gregoire*, 166 Vt. 66, 72, 689 A.2d 431, 435 (1996) (notice of charges and knowledge that conduct could lead to dismissal sufficient for due process); *Aronson*, 961 F.2d at 909-10.

█ We also conclude that Rich was provided with an opportunity to be heard. Not only did Rich enjoy a statutory and contractual right to a hearing, the March 15 letter from the superintendent explicitly informed Rich of these rights. Having chosen not to avail himself of the appeal procedures until approximately one month after the deadline, Rich "cannot now claim a denial of due process." *Hanton v. Gilbert*, 36 F.3d 4, 7 (4th Cir. 1994); see also *Hockney v. School Comm. of Lynn*, 747 F.2d 50, 52 (1st Cir. 1984) (teacher procedurally defaulted and lost right to hearing); *Brickner v. Voinovich*, 977 F.2d 235, 238 (6th Cir. 1992) (employee neither brought proceeding nor demonstrated why available procedure would not satisfy due process); *Russell*, 632 F. Supp. at 1442 ("Since the plaintiffs did not pursue their opportunity for a hearing, they cannot now complain that they were denied due process.").

## III.

Rich's final argument on appeal is that the lower court erred in granting summary judgment to the superintendent on Rich's civil rights claims under 42 U.S.C. § 1983 because defendant's motivation in recommending nonrenewal was a disputed issue of fact. The trial court concluded that there were no disputed issues of fact and that the superintendent was protected by qualified immunity, but its reasons are not entirely clear. We agree with Rich that defendant's motivation in failing to recommend renewal of his contract is a critical element of his First Amendment claim, and that issue remains disputed, precluding summary judgment.

█ Rich's civil rights claims are premised on his assertion that the superintendent recommended the nonrenewal of his contract in

retaliation for his exercising his First Amendment rights. To establish a prima facie case, Rich must show that his speech (1) is entitled to First Amendment protection and (2) was a substantial or motivating factor in his dismissal. See *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); accord *Hanton*, 36 F.3d at 6-7.

■ The first issue does not require a lengthy analysis. Without expressing an opinion on the merits of Rich's claim, and taking the facts in the light most favorable to Rich, we believe Rich introduced sufficient evidence to show that his speech touched upon matters of public concern. See *In re Morrissey*, 149 Vt. 1, 15-16, 538 A.2d 678, 687 (1987); see also *Waters v. Churchill*, 511 U.S. 661, 668 (1994); *Connick v. Myers*, 461 U.S. 138, 146 (1983). Rich's statement was made at a community forum, which was held to inform and involve parents about public school policies. The speech criticized a basketball cut policy as inconsistent with other written policies of the board. See *Pickering v. Board of Educ.*, 391 U.S. 563, 571 (1968) (teacher's criticism of board's allocation of school funds addressed matter of public concern); accord *Mt. Healthy*, 429 U.S. at 282, 284 (dress code); *Jeffries v. Harleston*, 52 F.3d 9, 10 (2d Cir. 1995) (bias in public school curriculum). This is not a situation in which a public employee took a public occasion to criticize a personnel decision or other internal administrative policy that applied only to employees. See, e.g., *Connick*, 461 U.S. at 148 (employee's speech concerning discipline and morale was "mere extension[] of [her] dispute over her transfer to another [position]"); accord *Hanton*, 36 F.3d at 7 (employee's speech "related to her personal dissatisfaction with . . . her employment"). The issue Rich addressed was one of interest to parents and students alike. At the very least, Rich met his burden of production on this issue.

The more important dispute between the parties is whether Rich's speech was a motivating factor of the superintendent's recommendation. Two events underlie Rich's claim. The first is the statement, discussed above, at the community forum. The second is Rich's threat, on March 8, 1994, that both he and a co-worker, Michael Pierce, would withhold teaching services if the superintendent refused to take action to eliminate what Rich alleged was the illegal use of software in his classroom.

In response to the community forum event, the superintendent placed a disciplinary letter in Rich's file. Even after Rich successfully grieved the letter, the superintendent wrote in the grievance report that, "The letter reflects the personal view of the Superintendent.

*These personal views remain.*" (Emphasis added.) It was not until Rich's threat to withhold services that the superintendent made a negative recommendation on nonrenewal, but it is entirely possible that, as Rich alleges, the recommendation was motivated by the superintendent's views that Rich had improperly spoken out at a public meeting. Indeed, Rich introduced evidence that, when asked for the reasons behind the nonrenewal, the superintendent mentioned only Rich's speech at the public meeting. Moreover, the superintendent concedes that Rich's threat to withhold services resurrected his concerns about Rich's exercise of judgment and self-control, an issue central to his disapproval of Rich's speech at the community forum.

■ Despite this evidence, the superintendent claims that there is no genuine factual dispute because he recommended the *renewal* of Rich's contract approximately two months after Rich's speech at the board meeting. He argues that, in light of this fact, the trial court correctly determined that his decision to nonrenew Rich could not have been in retaliation for Rich's speech. This argument overlooks that Rich was not required to show that the superintendent's decision was based entirely on Rich's speech; it is sufficient for him to show that his speech was a motivating factor of the superintendent's decision. Notwithstanding the superintendent's favorable recommendation after the first event, we conclude that a jury could find that Rich's speech at the board meeting may have tipped the balance toward nonrenewal and was a motivating factor in the recommendation. The trial court erred in resolving this factual issue on summary judgment.

■ Citing *Levinsky v. Diamond*, defendant contends that an objective standard applies to his motives and, therefore, that the qualified immunity defense is available to him. 151 Vt. 178, 190-91, 559 A.2d 1073, 1081-82 (1989). He misunderstands the role of the objective standard in qualified immunity analysis. Qualified immunity extends to individuals acting within the scope of their authority, acting in good faith, and performing discretionary acts. *Id.* at 185, 559 A.2d at 1078. For purposes of resolving qualified or "good faith" immunity, we apply the standard enunciated in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). An official performing discretionary acts is generally shielded from liability for civil damages insofar as his conduct does not violate "clearly established . . . rights of which a reasonable person would have known." *Id.* at 818; accord *Sabia v. Neville*, 165 Vt. 515, 521, 687 A.2d 469, 473 (1996). What the "official reasonably should have

known" is measured by an objective test. In other words, if the right is clearly established, then the official reasonably should have known of it, and the official's actual lack of knowledge will not bar suit. Conversely, a suit is barred if the right is *not* clearly established, because an official cannot reasonably be expected to know that the law forbade conduct not previously identified as unlawful. Thus, the defense is available even if the plaintiff shows that the official acted "with the malicious intention to cause a deprivation of constitutional rights or other injury." *Harlow*, 457 U.S. at 815.

This standard prevents exposing officials to the distraction and expense of defending themselves in the courtroom, and it permits the resolution of many insubstantial claims on summary judgment. Concern for the depletion and diversion of public officials' energies led the Court in *Harlow* to abolish the doctrine that an official would be deprived of immunity on summary judgment if the plaintiff alleged that the official had acted with malicious intent to deprive his constitutional rights. See, e.g., *Wood v. Strickland*, 420 U.S. 308, 322 (1975).

Here, defendant's motivation in not recommending renewal of plaintiff's contract is an essential element of plaintiff's claim that his constitutional rights were violated. This issue is distinct from defendant's knowledge of the applicable law. See *Feliciano-Angula v. Rivera-Cruz*, 858 F.2d 40, 45-46 (1st Cir. 1988). Under these circumstances, we cannot accept defendant's version of the facts at face value and dismiss plaintiff's claim on immunity grounds. Otherwise, the "'principal disputed question of fact, which forms the basis of the substantive claim, [would be] subsumed by the legal immunity inquiry and implicitly resolved by the court against the plaintiff when it concludes, on the basis of nothing more than the official's pretextual assertions, that the allegedly unconstitutional conduct contravened no clearly established law.'" *Id.* at 46 (quoting Note, *Qualified Immunity for Government Officials: The Problem of Unconstitutional Purpose in Civil Rights Litigation*, 95 Yale L.J. 126, 138 (1985)). Such an interpretation would allow public officials to punish the exercise of First Amendment rights with impunity. *Id.*; see also *Gutierrez v. Municipal Court of S.E. Judicial Dist.*, 838 F.2d 1031, 1050-51 (9th Cir. 1988) (reaching same conclusion regarding claim of intentional discrimination); *Martin v. D.C. Metro. Police Dep't*, 812 F.2d 1425, 1432-33 (D.C. Cir. 1987) (same conclusion regarding Fifth Amendment rights). Therefore, defendant's motive may not be disregarded as immaterial.

Finally, defendant argues that even if Rich has carried his burden, we should consider whether Rich's actions were so disruptive to defendant's administration of a government workplace that the employer's interests should prevail. See *Waters*, 511 U.S. at 680; *Jeffries*, 52 F.3d at 13. Although defendant makes a correct statement of the law, we decline to address this point because defendant did not submit any evidence concerning the issue of potential disruption below. See *Rankin v. McPherson*, 483 U.S. 378, 388 (1987) (defendant bears burden to justify discharge). Moreover, defendant's attempts to supplement the record on appeal are in violation of our rules. V.R.A.P. 10(a); *State v. Brown*, 165 Vt. 79, 82, 676 A.2d 350, 352 (1996). We leave the issue of disruption to the trial court on remand.

We conclude, therefore, that the trial court erred in granting summary judgment to defendant because the central issue on which Rich's claim depends — the motivation of the superintendent — remains disputed and could not be resolved, as a matter of law, on summary judgment. See *Feliciano-Angula*, 858 F.2d at 47 (summary judgment based on qualified immunity defense improper when disputed issue of fact); see also *Sabia*, 165 Vt. at 523, 687 A.2d at 474 (summary judgment not proper when existence of factual dispute).

*Affirmed in part and reversed and remanded in part for further hearing in accordance with this opinion.*