*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2014-406

MARCH TERM, 2015

| | | |
|---|---|---|
| George Kingston III | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Washington Unit, |
| v. | } | Civil Division |
| | } | |
| | } | |
| Montpelier Public School System | } | DOCKET NO. 163-3-13 Wncv |

Trial Judge: Helen M. Toor

In the above-entitled cause, the Clerk will enter:

Plaintiff George Kingston III appeals from the trial court's order granting summary judgment to defendant Montpelier Public School System in this wrongful termination case. He argues that the court erred in concluding that he was required to exhaust his administrative remedies before filing this lawsuit. We affirm.

The record indicates the following. Kingston worked as a special education instructional assistant for defendant in an elementary school. In September 2011, the school principal observed Kingston use what he considered excessive force with a student. Kingston claimed that the principal misunderstood what he saw. Kingston was terminated from his position in September 2011. In March 2013, Kingston filed a complaint alleging that defendant breached its contract with him by failing to follow the progressive discipline steps set forth in the collective bargaining agreement (CBA). The CBA provided that defendant could bypass the progressive steps for just cause if warranted by the severity of the offense. Kinston argued, however, that there was no just cause to bypass the procedures here. In May 2014, defendant moved for summary judgment, asserting that Kingston's failure to grieve and then arbitrate his termination as required by the CBA precluded him from pursuing his lawsuit.

The court agreed with defendant and granted its motion. It found the following facts undisputed. Kingston was employed during the 2011-2012 school year according to the terms of a Letter of Agreement that he signed on May 30, 2011. The agreement provided that Kingston's employment was "further governed by the terms of the Collective Bargaining Agreement between the District and the Montpelier Educational Support Staff Association." Under the CBA, Kingston's employment was protected from discipline or termination by a just cause provision. CBA § 22.6. Any such discipline or termination was subject to the CBA's grievance procedure. Id.

The grievance procedure has four steps. First, the employee must file a written grievance with the principal. The principal then must meet with the employee and the Association's representative and then issues a written decision. Id. § 9.2(B). If unsatisfied, the employee must file the written grievance with the superintendent. The superintendent then meets with the

employee and anyone relevant to the grievance and issues a written decision. Id. § 9.2(C). If still unsatisfied, the employee may appeal the superintendent's decision to the school board. Id. § 9.2(D). The fourth and final step is arbitration. Id. § 9.2(E). The arbitrator's decision is "final and binding and not subject to appeal." Id. § 9.2(E)(4).

On September 19, 2011, Kingston was walking hand-in-hand with a student who commonly exhibited challenging behaviors. The principal was in the hallway and believed that he saw Kingston yank the child's arm using excessive force. Later that day, the principal called Kingston into his office. The Association's representative was present and took detailed notes. The special educator was also present. The principal confronted Kingston with what he had observed and informed Kingston that he was being put on administrative leave pending further investigation. On September 21, 2011, the principal and Kingston again met. The Association representative was also present and taking notes. The principal confirmed that, in his view, Kingston's conduct was inappropriate and inconsistent with Kingston's training and the child's needs. The principal said that he was recommending the termination of Kingston's employment to the superintendent and offered to copy the employee rights section of the CBA for Kingston.

The next day, the principal sent a letter to Kingston reiterating that he was recommending termination of his employment and the basis for that decision. A copy of the letter was sent to the superintendent and to the Association's representative. The letter stated, "Consider this letter to be your formal notification of termination." Kingston responded with a letter to the principal in which he objected to the principal's characterization of his conduct. He asked to continue his employment with defendant.

On October 4, 2011, Kingston met with the director of special education. The superintendent was present. The Association's representative again was present taking detailed notes. Kingston said that he understood that the superintendent and the director "naturally" would support the principal's decision and asked if he would be eligible for future employment opportunities or a letter of recommendation. By email to the Association's representative, the principal, and the director of special education, the superintendent later confirmed that the school board's approval was not needed and that Kingston's termination was effective September 22, 2011, the date that the principal gave formal written notice of Kingston's termination. That was the end of the matter until Kingston filed this lawsuit.

Defendant argued below that Kingston's remedy was to pursue a grievance and binding arbitration under the terms of the CBA and that the availability of this process foreclosed his lawsuit. See Furno v. Pignona, 147 Vt. 538, 541 (1986) (recognizing, as general rule, that employee subject to collective bargaining agreement, who has grievance within scope of that agreement, must exhaust remedies available under that agreement before suing his or her employer). Kingston maintained that he was not obligated to pursue the grievance policy given defendant's breaches of its obligations under the CBA. In support of his position, Kingston relied on Furno, where this Court stated that:

> [A] recognized exception to the exhaustion requirement exists
> when the conduct of the employer amounts to a repudiation of
> those contractual [grievance] procedures. When an employer fails
> or refuses to perform actions required of it under contract and thus
> prevents the employee from complying therewith, the employer is

> estopped from asserting as a defense the failure of the employee to comply with the contract.

147 Vt. at 541 (alteration in original) (quotation omitted).

The trial court explained that in Furno, the employer terminated an employee but would not provide written notice of the termination so that the employee could grieve it. The employer maintained that the employee was not subject to the grievance policy but then argued that he was foreclosed from a judicial remedy because he failed to grieve. This Court found the written notice requirement critical to the employee's rights and concluded that the failure to provide it amounted to a repudiation of the grievance procedure. Id. at 542-43. In this case, by contrast, Kingston had received a letter formally advising him of his termination.

Kingston argued, however, that defendant failed to comply with other requirements of the CBA. First, Kingston claimed that it was not clear if he had a copy of the CBA. The court found that the only evidence on this point was the testimony of the Association's representative, who said that, as a general matter, all employees received copies of the CBA upon employment. Moreover, the principal offered to give Kingston a copy of the employee rights section of the CBA at the second meeting. Kingston questioned whether this really occurred but the court found that it was recorded clearly in the representative's notes of that meeting and that Kingston expressly agreed in his deposition that there was no reason to question the accuracy of those notes.

Kingston also claimed that the principal did not notify him of the complaint against him in writing. CBA § 22.4. The court concluded that this appeared to have resulted from the circumstances that the principal was both the individual who made the complaint and the sole eyewitness to the allegedly objectionable behavior. The principal did not receive a complaint from anyone else. The court concluded that § 22.4 contemplated the receipt of a complaint by a member of the administration, which would then be provided in writing to the employee so the employee had a fair chance to rebut it. It determined that Kingston was provided a fair chance to confront the principal here.

Kingston also objected that the principal failed to meet with him after Kingston sent his letter of objection to the principal in violation of CBA § 9.2(B). The court found that § 9.2(B), the first step of the grievance policy, was an awkward fit under the circumstances. It required an employee to file a grievance initially with the principal. Kingston claimed that his September 22, 2011 letter to the principal was that grievance filing and that the principal then failed to meet with him. As the court explained, however, Kingston's letter was written after two meetings with the principal and after formal, written notice of his termination. In any event, the court continued, the claim that Kingston was attempting to grieve his termination was undermined by Kingston's deposition testimony. There, Kingston stated that once he received the principal's termination letter, he asked for a meeting with the director of special education, hoping that he could still substitute in the district or obtain a future position as a paraeducator in the middle or high school. According to Kingston, that was the same request he was trying to make to the principal of the elementary school in his September 22 letter. The court found it clear that no one, including Kingston, believed that Kingston was pursuing a grievance. Kingston also confirmed that he was not pursuing a grievance following his meeting with the special education director and the superintendent. The court concluded that defendant was not responsible for Kingston's decision not to file a grievance.

The court considered and rejected several other claimed CBA breaches as well. Ultimately, the court concluded that, whether considered individually or together, the circumstances here did not show that defendant "repudiated" the CBA or the grievance process in any way that prejudiced Kingston or excused him from following the grievance process. It found no evidence in the record that defendant did anything to impede Kingston's ability to pursue a grievance. The court thus found that the exception to the exhaustion rule did not apply, and it granted defendant's motion for summary judgment. This appeal followed.

Kingston asserts that taking the facts in the light most favorable to him, the exception to the exhaustion requirement should apply. He first maintains that a factual dispute exists as to whether he had constructive notice of the terms of the CBA. According to Kingston, neither the fact that all employees generally received copies of the CBA upon employment or the fact that the principal offered to provide him with a copy of the employee rights section of the CBA establishes that he had notice of the terms of the CBA. If he did not have notice, Kingston continues, then he effectively was prevented from following the terms of the CBA. Kingston also argues that the court erred in stating that defendant was not responsible for the fact that he had not filed a grievance. While he does not concede that a grievance was never filed, he argues that he was never properly apprised that a grievance process was necessary for him to vindicate his rights due to defendant's repeated failure to follow the terms of the CBA. Kingston asserts that the court improperly excused defendant's "repeated violations" of the CBA.

We review a grant of summary judgment using the same standard as the trial court. Richart v. Jackson, 171 Vt. 94, 97 (2000). Summary judgment is appropriate when, taking all allegations made by the nonmoving party as true, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Id.; V.R.C.P. 56(a). We conclude that summary judgment was properly granted to defendant here.

First, we reject Kingston's notice argument. He is properly charged with knowledge of the CBA's terms. The collectively bargained contract was binding on its signatories, here, the School Board and the Montpelier Educational Support Staff Association. The Association is the exclusive negotiating representative for instructional assistants like Kingston. As such, the Association bound Kingston to the terms of the CBA. The letter of agreement Kingston signed upon his employment expressly stated this as well. See Morton v. Essex Town Sch. Dist., 140 Vt. 345, 349 (1981) (engaging in similar analysis and concluding that teacher was bound by terms of CBA, and that his failure to use grievance procedure available to him under CBA precluded him from suing employer for dismissing him without just cause); see also Spears v. Carhartt, 215 S.W.3d 1, 9 (Ky. 2006) (holding that employee was properly charged with knowledge of terms of grievance procedure in CBA where her labor union, acting in its capacity as her collective bargaining agent, agreed to provision, and employee's assent to provision could properly be inferred from fact that she continued her employment after provision took effect). Kingston's claimed ignorance of the terms of the CBA is no excuse. See Miller v. Local 50, Am. Fed. of Grain Millers, 468 F. Supp. 193, 201 (D. Neb. 1979) ("[I]gnorance of the terms of the collective bargaining agreement is not a defense to the exhaustion requirement."); Smith v. Gen. Elec. Co., 388 P.2d 550, 552 (Wash. 1964) (holding that plaintiff's professed ignorance of requirements of CBA regarding grievances did not excuse plaintiff's noncompliance with CBA's terms; evidence showed that copies of CBA were available to plaintiff and there was no evidence to show that employer denied plaintiff access to contents of agreement). Even aside from this, the undisputed evidence establishes that the Association generally provided copies of the CBA to employees at the commencement of their employment and the principal here expressly offered to

4

copy the CBA for Kingston. Kingston did not provide contrary evidence, such as affidavit or deposition testimony that he did not receive a copy of the CBA. These facts establish, as a matter of law, that Kingston had constructive notice of the terms of the CBA.

We thus turn to Kingston's remaining arguments. As indicated above, an employee subject to a collective bargaining agreement, who has a grievance within scope of that agreement, generally must exhaust the remedies available under that agreement before suing his or her employer. Furno, 147 Vt. at 541. This exhaustion requirement serves important policy goals. See Republic Steel Corp. v. Maddox, 379 U.S. 650, 653 (1965) (explaining that employee must afford union opportunity to act on his or her behalf, and such activity complements union's status as exclusive bargaining representative by permitting it to actively participate in the continuing administration of contract; employer interests also served by limiting choice of remedies available to aggrieved employees). If individuals were allowed to "completely sidestep available grievance procedures in favor of a lawsuit," it would not only cut across these interests, but it would also "deprive employer and union of the ability to establish a uniform and exclusive method for orderly settlement of employee grievances." Id. "If a grievance procedure cannot be made exclusive," the Supreme Court explained, "it loses much of its desirability as a method of settlement. A rule creating such a situation would inevitably exert a disruptive influence upon both the negotiation and administration of collective bargaining agreements." Id. (quotation omitted).

To be entitled to the limited exception to the exhaustion requirement, a party must show that the employer's failure or refusal to perform actions required of it under contract "prevent[ed] the employee from complying" with the contract himself. Furno, 147 Vt. at 541. Thus, in Furno, we found this exception applied where the employer refused to provide an employee with written notice of his termination or the reasons therefor, as required by the contract, and the employer told the employee that he was not entitled to the grievance procedure. Id. at 541 & n.3. This obviously prevented the employee from following the grievance procedure.

This case is not like Furno. There was no violation of the grievance procedure by defendant that deprived Kingston of the ability to follow the contractual grievance procedure. There is nothing to show that defendant "repudiated" this procedure. To the contrary, the undisputed facts show that the principal met with Kingston several times with an Association representative present. Contrary to Kingston's assertion, the facts show that Kingston had both adequate notice of the principal's concern that Kingston had "yanked" a child's arm with excessive force and the opportunity to offer his version of events. The principal orally informed Kingston of his concern, and then informed him again in writing. Even if the agreement required the principal to meet with Kingston yet a third time after Kingston wrote a letter expressing his difference of opinion, assuming arguendo that his letter constituted a grievance of the principal's decision, it was only logical for Kingston to proceed to step two of the grievance process and meet with the superintendent and the special educator. Kingston took no action after this meeting to further pursue any grievance. He admitted to this in his deposition testimony. Any departure by defendant from the requirements of the contractual grievance procedure in this case did not rise to the level of a repudiation of that procedure depriving Kingston of his ability to pursue it.

As one court has explained, "the employer's exhaustion defense and the employee's contractual obligation to grieve and arbitrate both contemplate a persistent attempt to fully exhaust the available dispute-resolution procedures established by the bargaining agreement."

Robbins v. George W. Prescott Publ'g Co., 457 F. Supp. 915, 920 (D. Mass. 1978) (citing Vaca v. Sipes, 386 U.S. 171, 184 (1966)), rev'd, 614 F.2d 3 (1st Cir. 1980).  Kingston failed to exhaust his administrative remedies here, and he cannot blame his failure on defendant.  Kingston knew, or should have known, that he could file a grievance of the superintendent's decision with the School Board, and then seek arbitration if he continued to be unsatisfied.  He simply chose not to do so.  Kingston seeks "to obtain the benefits of a contract while avoiding the obligations which it imposed upon [him]," and he "has shown no valid reason why this attempt should succeed." Smith, 388 P.2d at 552.  Summary judgment was properly granted to defendant.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
John A. Dooley, Associate Justice

_____
Beth Robinson, Associate Justice